Ruffin, Chief Justice,
 

 having stated the case as above, proceeded: — The decree in the Superior Court appears to us to have been required by our statutes concerning
 
 *68
 
 divorces ; and the particular ground on which it is placed to be in accordance with the principles of sound policy and public morals.
 

 If the case were a proper one for relief of a different kind from that which the plaintiff asked, he cannot complain that it was not granted, but that his petition was dismissed. In the first place, the prayer of the libel is specifically for a dissolution of the marriage, and for that only. In the next, he refused at the trial to accept any decree, but that deemed by himself most favourable to him. A decree, even for a separation only, will never be made by the court, unless at the instance of the party, although the parties be in fact separated, and there be other matter apparent, on which a sentence of legal separation might be founded. If they can be reconciled, it may prevent further scandal — in which the public is much concerned; and may also prevent further violations of moral duty by the offending party. Hence, though there is no jurisdiction here to decree a restitution of conjugal rights, the court reluctantly widens the breach between persons already separated, and cannot become active to that end by giving its authority for future separation, but when urged to it by a party as a matter of strict right. For each of these reasons, the petition was properly dismissed, unless the plaintiff be entitled to have the marriage dissolved. We think he is not; and indeed, upon the whole case, as it appears affirmatively, or as it must be taken from the defect of the allegations ánd proofs on his part, the plaintiff is precluded from any relief whatever, however explicit soever his prayer or motion for it might have been.
 

 The first infraction of the matrimonial contract was on the part of the husband. He not only separated from his wife, but he abandoned and maliciously deserted her— leaving her, as far as we see, unprovided for, and, at the same time, as we do see by his own admission, untruly imputing to her the scandalous and immoral breach of her vow of fidelity. Upon the credit of the verdict, the wife, up to that period was innocent. By the same authority, her guilt subsequently is established.
 
 *69
 
 There have been but few divorce causes in the courts of this state; and it has not yet been laid down, what is be the effect of a separation of the parties by agreement, yielding to each of them a freedom of volition, and co
 
 r
 
 ® responding action, independent of the other, more or less ample, on the application of one of them for relief, on account of adultery committed by the other during the separation. It is obvious, however, to any reader, that the cases within the contemplation of the legislature of 1814, (see act of 1814,
 
 Rev. ch.
 
 869,) are those in which the party asking for relief has lost conjugal society by the act alleged as the gravamen of the complaint on which a divorce of either kind is sought. In the first section, the court is authorized, in its discretion, to grant a divorce of the one kind or the other to the injured person, “ where either party has separated him or herself from the other, and is living in adultery.” These words, plainly, do not embrace the case of adultery by one, who, against his or her will, has been abandoned by the other. Nor do they seem fairly to embrace the case where a like offence has been committed during a separation by mutual consent. The court does not mean it to be supposed, that such separations, unless under very unlimited terms — importing almost total free agency — amount in themselves to licenses to either party, as against the other, to commit adultery. One effect of such unchastity on the part of the wife would, doubtless, be, to repel her application for a divorce
 
 a mensa et thoro,
 
 or to be alimented, under the fifth section of the act: for although such separation be mutually injurious, yet the duty remains with each to become reconciled, and the wife ought not to render herself unworthy of reconciliation, and put it out of their power to come together again, without producing the degradation of the husband. It is, however, a very different question, whether adultery, pending a separation by agreement, ought to found a decree that the parties should be divorced from bed and board — that is, to legalize and enjoin a continuance of the separation, and thereby, to a certain extent, to tempt the frail party to other lapses of the same kind. It is the tendency of separation to betray
 
 *70
 
 the parties into guilt. Besides the effect of marital cohabitation on the passions, the presence of each is a protection to the other. It is true, the jury has here found, that the husband did not allow of his wife’s prostitution, nor expose her to lewd company. In the sense that he did not give actual consent to any particular act, or that he did not intend the contamination of his wife’s principles altogether, that may be a correct finding; but it is undeniable, that long — apparently indefinite and total — separation by agreement, do expose the parties to the most dangerous trials: so hazardous, that a result adverse to the purity of the one and to the honour of the other
 
 ought
 
 not to surprise any body, nor be deemed unexpected nor undesired by the parties themselves. We have the highest authority for the precept, “ that whosoever shall put away his wife, saving for the cause of fornication,
 
 causeth
 
 her to commit adulterywhich is not more obligatory as an injunction of revealed religion, than it is just and true as a proposition in the philosophy of the human mind and heart. We should doubt extremely, therefore, whether— regard being had to the public morals, and the words of our statute being kept in mind — adultery, committed during the subsistence of an agreed separation, would found a decree for a divorce from bed and board. It is true the agreement is not obligatory; at least not so that a court will decree upon it. In England it is disregarded as an authority for a separation; and the ecclesiastical courts, notwithstanding such an agreement, decrees upon the application of either party, a restitution of conjugal rights. A separation, under such a contract, may not, for that reason, have the same effect there as it should here; because there either party may compel the other to resume the marital duties, at least to the extent of conversation and society. But here there is no power to bring the parties together; and therefore we ought to make the consequences of a voluntary separation as penal as possible to each, by denying relief to one for any conduct of the other during the separation, that has probably arisen out of it.
 

 But if adultery committed under such circumstances
 
 *71
 
 would be a ground for a divorce from bed and board, yet adultery consequent upon the desertion, or, to use the phraseology of the statute, the abandonment of the wife and family by the husband, especially under the circumstances in this case, would certainly not be. A divorce of either kind may be granted within the words of the first section of the act on the same state of facts. It is to be granted to the party injured against a person who has separated, him or herself
 
 from the other and is living
 
 in adultery. Both facts must concur; that is, the fault of separation and the fault of adultery must be on the same side. When, therefore, a husband abandons his wife, and especially, leaves her destitute and writh her character tarnished by his own unfounded aspersions, he cannot be looked upon as an injured person within the act. There was too much reason to suppose that he might contemplate the very case that has here happened, for the legislature to authorize relief to him.
 

 There are also other grounds upon which the plaintiff is barred of any decree. The petition does not specially charge any adulterous connexions but two: one existing at the time the suit was brought; and the other, “ a few months before.” The verdict is yet less precise, and says only, in the words of the statute, that the wife was guilty six months before the suit. There are, however, other allegations in the libel, which we must take to be true, as against the petitioner, from which it is a necessary inference, that the conduct of the wife was grossly lewd, and her prostitution long and notoriously infamous. The petition states the residences of the parties to be in the adjoining counties of Caswell and Guilford; that, besides the child supposed by the petitioner to be legitimate, the wife had three other children, all of whom the husband disowns, and one of whom is a mulatto; all born after the marital cohabitation of these parties had terminated. The answer, indeed states, that the separation, during which these incidents occurred, preceded this suit six years. There is no finding of the jury upon this point; and we cannot take the time from the answer. But it is necessarily certain, from the nature of things,
 
 *72
 
 that facts decisive of the wife’s guilt, previously suspected by the husband, must have happened several years before complaint was made. The plaintiff says, “ that she acted in this abandoned character for some time before it came to his ears.” But he does not specify the time at which he heard it, nor offer evidence of it; nor in any manner account for his making no inquiries into his wife’s conduct, or for the delay to vindicate his honour after the “ damning proofs” did come to his knowledge and that of the community. A divorce from bed and board is only a decree for separation, intended to relieve the injured party from the society of an impure and faithless partner, and, if founded on the adultery of the wife, to exonerate the husband, unless there be a reconciliation, from the charge of the wife’s maintenance. It proceeds on the idea that there is no moral taint on the one side, but a just sensibility to violated honour, as well as to the invasion of legal right. The law will not be active to protect a husband from his wife, if his acts have been conducive to her turpitude, or if his conduct evince indifference on his part to her profligacy, in its inception or progress. This principle has been long acted on in the courts of other countries, which have jurisdiction in cases of divorce; and seems to be assumed by, if not expressly incorporated in, the act of 1814; for the cases of the allowance, or the procurement of the wife’s guilt, and of forgiveness by either party, the third section, in terms provides: so, also, of the exposure of the wife to improper associations. Long delay to complain of an injury of this kind, after probable knowledge of the “ criminal fact,” is so little to be expected, that every one must be surprized and shocked at it, unless it can be explained. But when a wife openly prostitutes herself through a period of several years, in the neighborhood of her husband, and he makes no inquiry, does not interpose, nor even utter a murmur, we are obliged at once to pronounce such conduct incapable of explanation. The delay must arise either from interested motives, or from a deadness of feeling that no injury can rouse. It implies a license to the wife, so far as his rights and honour are involved, to act as she pleases ; and amounts, by fair
 
 *73
 
 intendment, and constructively, to condonation. Total inactivity and profound silence under such circumstances, are a pardon. He did not feel the injury, and therefore he did not and cannot
 
 complain.
 
 A failure to complain at the proper time, ought to preclude him from doing so afterwards. That such is the true interpretation of the provisions of the third section, is further to be inferred from those of the sixth section. That enacts, in order
 
 “
 
 to guard against the heat of momentary passion, and afford time for reflection and opportunity for reconciliation,” that no suit shall be brought until
 
 after
 
 the lapse of at least six months from the fact laid as the ground of it. . ° This is a limitation of an unusual character. It prohibits suit within a particular period; while all others require the action to be brought within a certain time, and not after. The difference arises out of the nature of this injury, as contradistinguished from all others. An application for a divorce on a stale case, was not, and could never be expected. The danger was that there would be ,. , ,, , an immediate appeal — m a “ moment, to the law. The legislature interposes therefore, not to hasten, but to retard the application for legal redress, for the sake of protecting the parties and their families from the consequences of sudden and high excitement. A period within which suit must be commenced, is not prescribed by the act, because the very nature of the grievance, if really existing
 
 in invito,
 
 and of the redress, sufficiently stimulate to diligence, and delay is really inconsistent with the existence and just sense of the injury. The suit need not indeed be commenced
 
 eo instanti
 
 that the six months expire, for as a precise bar, no time is fixed; but a greater delay, notwithstanding the words “ at least,” is not required, and ought to be accounted for. It is not excused, especially in the husband, when, from its length and other circumstances, it is apparent that it did not arise out of nor have reference to any of those reasons for delay contemplated by the legislature. Suit ought to be brought within so short a time, as reasonably to show that the party is smarting under, and acting on the wrong itself, and a proper sense of it; and that he has not acqui
 
 *74
 
 esced until he finds it necessary to justify himself to others, or becomes desirous of a divorce for some other ulterior purpose. Such long and gross negligence and settled indifference to his wife’s conduct, and to the subsistence of the connexion between them, notwithstanding such conduct, are tantamount to connivance, if they do not plainly denote it. They show, at the least, that the complaint is
 
 not
 
 made “ in sincerity and truth
 
 for the causes
 
 mentioned in the libel,” but for other reasons.
 

 
 *72
 
 The law will not be active to protect a husband from his wife, if his acts have been conducive to her turpitude, or if his conduct evince indifference on his part, to her profligacy, in its inception or pro-
 

 Where a wife openly prostitutes herself, through a period of several years, in the neighborhood of her husband, and he makes no inquiry,
 
 *73
 
 does not “^even utter a 1 *j““?r*os0 fav as his and honour are involved, to and by fairln. tendment, süuctively, 4? condonation.
 

 Suit for a ought to be br.oug'llt short aS°
 
 *74
 
 time, as reasonably to show, that the party is smarting1 under and acting on a proper sense of the wrong itself; and that he has not acquiesced until he finds it necessary to justify himself to others, or becomes desirous of a divorce for sqme other ulterior purpose.
 

 The discretionary authority given by the act of 1814,
 
 (Rev. ch.
 
 8u9,) to the court, to decree a dissolution of the marriage, or a separation of the parties, when one of them leaves the other, and is living in adultery, is not an arbitrary discretion, hut a sound and judicial one, fbund-
 
 *75
 
 ed on rea-¿¡plea,
 

 
 *74
 
 Still weaker are the claims of this petitioner to a dissolution of the marriage. Every reason for requiring active diligence in preferring an application for a divorce
 
 a mensa et thoro,
 
 and for rejecting it, when preferred upon any of the demerits of the applicant which have been mentioned, increases, and greatly increases in strength, when the court is asked to annul the contract. The statute, indeed, alters the common law so far as to declare marriage dissoluble; but it is not absolutely enacted that it shall be dissolved for every act of adultery, nor even in any case of adultery. The authority is given to the court to decree its dissolution, or a separation, at the discretion of the court, when a party separates him or herself from the other, and is living in adultery. This does not mean an arbitrary discretion, but a sound and judicial one, founded on some reasonable and fixed principles. There must necessarily, therefore, be some distinction between cases in which a party is
 
 entitled
 
 to a divorce
 
 from the
 
 bonds of matrimony, and those in which the party can properly ask only to be protected from the society of the impure and unchaste. Although a divorce
 
 a mensa et thoro
 
 may be allowed in some instances to a person who is not entirely impeccable, who may not have been exemplary in all the attentions and stipulated offices assumed in contracting this relation, yet the policy of the law, the interest of the offspring, the tranquillity and happiness of families in general, forbid the dissolution of marriage, at the suit-of a person to whom default in any of the essential duties of married life can be fairly imputed. This distinction arises out of the provision vesting a discretion in the court. It seems to us to be a sound one, and that
 
 *75
 
 it ought always to be kept in view. The motive for seeking a dissolution of marriage may often be the most powerful that can prompt human action, or excite human desires. It may not arise out of the guilt of the one party, so much as out of the indifference or disgust of the other, or the wish to form a new connexion. The attempt is to be watched closely, and the relief guarded narrowly. When, therefore, persons who have entered into the marriage state, and in doing so have solemnly engaged to each other their society, their mutual advice and kindness, and personal good offices during life, and their assistance in the nurture and education of their offspring, shall violate these engagements, in the fulfilment of which the common interests of society are so deeply involved; when each shall renounce the obligations assumed on his or her part, and affect to release those of the other party by a dissolution
 
 de facto
 
 of the marriage, in the form of a separation by agreement, it seems to us, that such persons cannot ask of the country, whose most wholesome institution is thus abused and despised, to carry their unlawful agreement more completely into effect by judicial sentence, freeing them from each other, by reason of any conduct supervening their own renunciation of their claims on each other. As the statute makes no provision for a divorce for any cause except impotency, existing before their cohabitation commenced, so it seems to contemplate the continuance of the cohabitation, up to the time of the guilty act on which the divorce is to be founded. If, indeed, the husband drive away his wife, or abandon her, and become addicted to a course of gross licentiousness, the motive for his original acts may be seen in his subsequent ones, so as to connect the whole together; but where the separation is voluntary on both sides, or fully assented to, each violates the great duty of affording to the other conjugal society, and withdraws the restraints ■and correctives which such society creates.
 
 They
 
 separate from
 
 each other;
 
 and not
 
 one
 
 of them
 
 “from the
 
 otheras the act expresses it. Now, the divorce from the bonds of matrimony is not to be. granted merely because one or both of the parties wish it. It ought to
 
 *76
 
 be granted only in the extreme case, where the conduct of one party is such that they ought not and cannot live-together, and the other party has been, and was, up to the time of the conduct complained of, willing and ready, and proceeding in the performance of the duties appropriate to that party. It is not simply a cause between the parties to the record; the country is also a party, and its best interests are at stake. The very lapse insisted on might not, and probably never would have occurred, if the party had been present to guard that innocence which has been betrayed by temptation let in by the absence of that party. But in this case the husband threw his wife from him — “discarded her from his embraces.” He seems to have waited for her pollution to be thorough and shameless, and her profligacy matured, under his neglect and aspersions. He withheld the most powerful inducements
 
 to
 
 his wife to preserve her innocence, or to reform her life: he withheld the complaint of her conduct as a grievance to him, so long, as to create a presumption that he did not heretofore feel that conduct to be a grievance, and does not now feel his marriage to be so, in itself, but only as it may stand in the way of his forming a new and more agreeable or advantageous match. It would be of most dangerous example to put a husband thus acting into a condition that might enable him to do so. What damages would a jury give this husband in an action
 
 for
 
 the seduction of his wife under such circumstances
 
 1
 

 The court has disposed of the questions made at the bar on this case, as if they arose upon the pleadings and verdict in the record. We cannot, however, omit to avail ourselves of the opportunity of saying, that the petition fails entirely to put in issue the adultery of the wife before the separation, and does so, in respect to that occurring afterwards, very vaguely, except that subsisting at the time of filing the petition. It ought, as far as possible, to charge specifically the facts to be given in evidence. When open and promiscuous prostitution is the foundation of the libel, it may be sufficient to allege it in more general terms, because the charge is of a nature to admit very general evidence ; but even then, time, place and circum
 
 *77
 
 stances may be material, as indicating to the court, the propriety of granting or refusing the relief, according to the conduct of the husband. In the ecclesiastical courts. of England, the course is to require the libel to state a perfect case for a divorce, before it is admitted to proof; so that it can never be helped out by the evidence. This is probably the true meaning of the provision in our statute, which requires the pétition to be exhibited in term time, or to a judge in vacation, at least thirty days before the next term, that he may allow it, if sufficient on its face, or disallow it, if insufficient, to be filed and proceeded on. At any rate, when the plaintiff relies on adultery committed with a particular person, or at a particular time, such person, time and place ought to be specially and plainly charged; and not after the method of this petition; which states the belief of the petitioner, that his wife left home, “ for the purpose of indulging in criminal intercourseand that he “ has been informed that she indulged in criminal intercourse with both whites and mulattoes.” It is the more material to observe precision in this respect, because the act of 1827 authorizes an appeal in every case to this court, which is confined “ to the facts ascertained in the Superior Courtand no facts can be ascertained but such as are charged by one of the parties. The charges ought therefore to be in legal language, and to be articulate and certain as to acts, persons, times and places. The statute uses the emphatic words,
 
 “
 
 setting forth therein
 
 particularly and especially
 
 the causes of the complaint.”
 

 Per Curiam. Judgment affirmed.