Pearson, J.
 

 This is a petition for a divorce. The Court granted a divorce, and from this decree the defendant appealed. The facts were these. The parties were married in January, 1844, and lived together until June of that year, when, as the petitioner alleges, the defendant committed the crime of forgery, and his guilt being discovered soon thereafter, he abandoned “ and deserted your petitioner', and left her dependant upon the care and protection of her mother, with whom she has lived ever since “ that since your petitioner was thus deserted by the husband, he has lived in the county of Jones, keeping himself concealed as much as possible during the day, and indulging himself in his vices at night, and does not venture to the county of Craven, where your petitioner resided, at the time lie separated himself from her, and. still resides.” The petitioner then avers, that “ since the defendant separated himself from her, he has given himself up to dissolute habits, and has been and is living in adultery with a negro woman, or slave, the property of”-. Several other specific charges of adultery are made, but it is not necessary to state them. Upon these allegations, the'petitioner prays for a divorce from the bands of matrimony.
 

 
 *94
 
 The defendant admits, that, in June 1844, he was charged with having committed forgery, but he says, the accusation being made known to his wife, “she either did not believe it, or if site did, it did not prevent her from living with him for some time thereafter, upon the best and most conjugal terms,” professing, and as he believes, feeling a warm and devoted attachment for'him, and he positively denies the allegation that he separated himself from, or deserted and abandoned the petitioner in 1844 or at any other time; on the contrary he says, although they have not lived together for sometime,
 
 “
 
 yet he has used every means in his power, to induce the petitioner to perform her duty as a wife, and share his bed and fortunes, but she has abandoned him and refuses to live with him and give him her society.” The defendant avers that “he deeply regrets her course of conduct, and he verily believes, that if the petitioner had been left to her own feelings, she would not have deserted and refused to live with him ;” but he says.
 
 “
 
 she having a competent means of livelihood by the marriage settlement, and large expectations from her mother, has been induced by her and others, unfriendly to him, to disregard her marriage vows, and to refuse to live with him;” that the petitioner “has resided for several years with her mother, which, for sometime, she was forced to do, and, at one time, was actually prevented, by force, from going to the defendant, where he resided.” lie further says, “ while he deplores this state of things, and might well palliate any indiscretion, as being brought about by it,” yet he denies the allegations' of his having committed adultery; and he has at all times desired, and still desires, that she should return and live with him, as her duty, as a wife, requires.
 

 Seventeen issues
 
 were submitted to the jury; it is only necessary for the purpose of our decision, to state one of them. “ To the third issue, the jury respond and say, that
 
 *95
 
 the defendant did separate himself from the petitioner, and live in adultery with a negro slave, named Hannah.” This finding is “ general” as to
 
 the time
 
 of the separation. If it be taken to mean that the separation was in 1844, or at any time before August, 1845, it is directly opposed to the charge of the Court, for his Honor instructed the Jury — . “ taking the evidence to be true, there is no evidence that the defendant separated himself from the petitioner,
 
 before the summer of
 
 1845. It will, therefore, be proper for the Jury to confine their attention to what took place
 
 after-
 
 August, 1845, in order to decide whether the defendant had separated himself from the petitioner, against her consent.”
 

 ■ We are to take the issues and the finding to be in these words: “The defendant^
 
 after August,
 
 1845, did separate himself from the petitioner, and live in adultery,” &c. Consequently, there is a variance bdtween the
 
 “probata”
 
 and the “
 
 allegata,”
 
 for the petitioner alleges that the defendant separated himself from her in 1844. So the decree for a divorce is put, simply, on the proof, and not on the ground, that the
 
 allegations
 
 were proven. In this there is error. An allegation, without proof, passes for nothing, — proof, without an allegation, passes for nothing. This is the rule in reference to all proceedings in Court; for, without a distinct allegation, the defendant is left in the dark, and cannot be expected to come prepared with his proofs. But, in a divorce case, the Statute requires, not only that the allegations should be made, but should be
 
 sworn to.
 
 It may be proper to notice the fact, that the petition wras amended, and was not sworn to, as amended. We do not put our decision on that, but we think, clearly, that all the allegations introduced by the amendment, are, for that reason, out of the case. It is said that the allegation is proven, except in regard to the time, and that time is im
 
 *96
 
 material, — “it is not the essence of a contract or of an of-fence.” This is, in general, true ; but
 
 “
 
 time” is sometimes material, and when so, it is just as important to prove the allegation iu reference to it, as anything else; and the question is, “was it material to fix
 
 the time
 
 of the separation ?”
 

 If a wife leave a husband, and refuses to live with him,
 
 without sufficient
 
 cause, and he afterwards lives in adultery, .this is no cause of divorce; for, the consequence may be ■ ascribed to her prior violation of the duty of a wife. “ No one shall be allowed to take advantage of his own Wrong.”
 

 If a husband is accused of a crime, or if he is guilty of it, — this is no sufficient cause for his wife to refuse to live with him; and she is not thereby justified in a violation of her marriage vow. — She agreed to take him ‘‘ for better or for worse.”
 

 The petitioner alleges that the defendant
 
 abandoned her,
 
 (that is the most expressive word,) in 1844, This allegation is denied, and the defendant says, he and the petitioner “ lived upon the best and most conjugal terms” until after August, 1845, when she was forced by her mother, and other persons unfriendly to him, to abandon him, and to refuse to live with him.” The pleadings, therefore, make this distinct issue : Was the fact, that the parties ceased to live together as man and wife, caused by the act of the petitioner, to which, it is alleged, she was persuaded, or forced, by others, or was it caused by the act of the defendant, he being unwilling to live with her, and rejecting her as his wife ? In reference to this issue, time
 
 is
 
 material, for the very question is, which of the two was the first, in point of time, who came to the determination, not to recognise the other in the violation of the duties imposed by the marriage 'VOW;
 

 
 *97
 
 Upon the next trial, we hope, the issues will be more precise in terms, and in reference to the points put at issue by the pleadings.
 

 Per Curiam.
 
 Venire de novo
 
 awarded.