M. W. STEEL v. MARY E. STEEL.

*Divorce — Adultery — Demurrer — Incest — Fraud — Abandonment — Husband and Wife — Pleading.*

1. In an action for divorce *a vinculo*, the admissions of parties are not competent evidence ; but a demurrer to the petition for divorce admits that facts were alleged and can and will be proved, so as to secure the verdict of a jury.

2. Unknown illicit intercourse, even though incestuous, prior to marriage will not authorize a decree for divorce under section 1285, subsection 4 of *The Code*, unless pregnancy resulted ; but if the application rested solely upon the ground of the fraud practiced, the Court might be inclined to add another exception to the general rule restricting divorces.

3. The law, as it stood prior to 1872, whereby a husband who had turned his wife out of doors, exposed her to lewd company, and thereby caused, or contributed, to her adultery, was not allowed to avail himself of the remedy provided by statute, has no application where the wife had concealed from the husband the fact that she had been living in habitual incestuous intercourse with an uncle, for which she was liable to indictment at the time of the marriage; nor is the husband now required to allege, before he can show such adultery, that the separation and abandonment was not his fault.

4. A party seeking divorce in this State is not bound to purge himself by negative averments that he is not himself guilty of adultery.

This was an ACTION for divorce a *vinculo matrimonii*, tried at the August Term, 1889, of the Superior Court of SURRY County, before *Gilmer, J.*

The complaint is as follows:

"1. That, on the 13th day of March, 1887, the plaintiff and defendant were married in Surry County, North Carolina.

"2. That, at the time of said marriage, the plaintiff had every reason to believe, and did believe, that the defendant was a virtuous woman, she being a young woman of about nineteen years of age.

"3. That, shortly after the marriage, the plaintiff had reason to suspect that the defendant had not lived a virtuous life, but not having proof to sustain his suspicion, he continued to live with the defendant as a dutiful husband, until about four months had elapsed, when, to his horror, the defendant admitted to the plaintiff that she had been seduced by her maternal uncle, Thos. Creed, who had habitually had sexual intercourse with her for a period of three years; that plaintiff never lived with the defendant as husband afterwards, but immediately carried her to her father's house and surrendered her up, she having admitted to her father the acts of adultery as alleged; that since that time the plaintiff has refused to live with the defendant.

"4. That, prior to the marriage as aforesaid, the defendant had committed adultery with her uncle, Thos. Creed, all of which defendant concealed from plaintiff before marriage.

" 5. That, prior to said marriage, as plaintiff is informed and now believes, the defendant had committed adultery and incest with her paternal uncle, John Draughan, all of which had been concealed from the plaintiff at the time of the marriage.

" 6. That, since the marriage, and during the said separation as aforesaid, he believes the defendant had committed adultery with one W. H. Hall."

Wherefore, plaintiff demands judgment that the bonds of matrimony between plaintiff and defendant be dissolved. The complaint was verified in the form prescribed by statute.

The defendant demurs on the ground that the facts stated in the complaint do not constitute a cause of action.

"1. Because it is not charged, alleged, or averred, in said complaint, that pregnancy resulted from the alleged adulterous intercourse that is specified in the third and fourth paragraphs thereof.

" 2. Because it is not alleged in said complaint that the separation and abandonment of defendant by the plaintiff (as admitted in the complaint) was not the fault of plaintiff.

" 3. Because it is not alleged in said complaint that pregnancy ensued from said adulterous intercourse as specified in the fifth paragraph of said complaint.

" 4. Because the alleged adulterous intercourse with W. H. Hall, and specified in the sixth paragraph of said complaint, it is admitted therein that the same was after plaintiff had abandoned defendant, and no averment that said abandonment was not by the default of the plaintiff."

The demurrer was overruled and with leave to defendant to answer, defendant appealed.

*M. C. B. Watson*, for the plaintiff.
No counsel for the defendant.

AVERY, J.—after stating the facts: The statute (*The Code*, § 1285) permits a dissolution of the bonds of matrimony only on application of the *injured* party, and in one of the four following cases:

"1. If either party shall separate from the other and live in adultery.

"2. If the wife shall commit adultery.

"3. If either party was, and still is, naturally impotent.

"4. If the wife, at the time of the marriage, be pregnant, and the husband be ignorant of the fact of such pregnancy, and be not the father of the child with which the wife was pregnant at the time of the marriage."

Sub-section 2 was first enacted by the Legislature of 1871–'72 (ch. 193, § 35), and sub-section 4 in the act of 1879 (ch. 132), while the other provisions of the sections are, substantially, the same as the old law (Rev. Code, ch. 39, § 2; Rev. Stats., ch. 39, § 2).

Divorces are granted only when the facts constituting a sufficient cause, under a proper construction of the law, are pleaded, proved and found by the jury. *McQueen* v. *McQueen*, 82 N. C., 471. The admissions of the parties are not competent evidence, as in other actions, of the truth of the material allegations of the pleadings. *The Code*, §§ 268 and 2888; *Perkins* v. *Perkins*, 88 N. C., 41. But, when a defendant demurs to a petition for divorce, the Court here must consider the demurrer as a concession, not only that the facts alleged are true, but that they can and will be proved, so as to secure the verdict of the jury.

Pregnancy did not result from the illicit intercourse between the defendant and her uncle Creed prior to her marriage, and the application does not, therefore, bring the case under sub-section 4. Before the enactment of sub-section 2, this Court, as a rule, refused to recognize the right of a husband to divorce on the ground that his wife had practiced a fraud upon him previous to marriage by deceiv-

ing him as to her character or condition. *Scroggins* v. *Scroggins*, 3 Dev., 535; *Long* v. *Long*, 77 N. C., 304. The extreme case of *Borden* v. *Borden*, 3 Dev., 548, constitutes an exception to the general rule. There the divorce *a vinculo matrimonii* was granted on proof that the defendant induced the plaintiff to marry her by falsely representing that he was the father of a child of which she had already been delivered, when, in fact, it was a bright mulatto, and was exhibited to him under such circumstances as deceived him in relation to its color. If this application rested solely upon the ground of fraud practiced prior to the marriage, the unusual circumstances would naturally incline a Court to add another exception to the general rule.

Under the law in force before the year 1872, the adultery of the wife, committed after separation from her husband, was held to be insufficient cause for granting a decree of divorce to him, if he had unjustly expelled her from his home, exposed her to lewd company, made her home-life intolerable by cruel treatment, or deserted her without cause and left her unprovided for   *Wood* v. *Wood*, 5 Ired., 674; *Moss* v. *Moss*, 2 Ired., 55; *Whittington* v. *Whittington*, 2 D. & B., 64. In such cases, the husband was deemed guilty of the first infraction of the matrimonial contract and responsible for bringing about the separation, so that it could not be adjudged that the wife separated herself from him. In both the cases of *Whittington* v. *Whittington* and *Moss* v. *Moss* the Court gave great weight to the fact that the charges of unchastity preferred against the wife as the reason for driving her from the husband's home were false, and the husbands were responsible for the separation.

It cannot be successfully contended that, after the amendment of the divorce law in 1872, by inserting sub-section two, a husband seeking divorce for adultery of his wife, after she had separated from him, must, in order to establish the fact that he is the injured party, prove, antecedent to show-

ing the act of adultery, precisely what he must have shown in evidence, as a prerequisite to obtaining a decree, if the action had been brought under the old law (sub-section one) and had been founded on the allegation that his wife had left him and lived in adultery with another. If such had been the legislative intent, the law would have, in its terms, provided relief only where the wife separated herself from her husband and commits adultery. In determining how far the new provision of the act of 1872 (sub-section two) is limited in its operation by the condition contained in the previous section, that the husband must be the injured party, this Court in *Tew* v. *Tew*, 80 N. C., 316, gave a construction to the statute that is evidently tinged by the restrictive ideas of the older law. The Court say, " No husband can have the bonds of matrimony dissolved by reason of the adultery of the wife committed through his allowance, his exposure of her to lewd company, or brought about by the husband's default in any of the essential duties of the married life, or supervenient on his separation without just cause." Upon the case stated in the complaint, the only question presented is, whether the plaintiff appears to be the injured party. We hold that no culpability attaches to the husband, who after the open avowal by the wife, in the presence of her father, that she was guilty of habitual incestuous intercourse with her uncle for three years before her marriage, leaves her under the roof of her father and lives thereafter apart from her. The wife had not only been guilty of unchastity, but of incest, habitually practiced, for which she could be indicted and punished. Her arraignement in the Courts for such criminal conduct must bring shame and disgrace upon her, and dishonor and mortification upon her husband. When such an abandoned woman wins the affections of a man, by inducing him to believe that she has led and is leading a virtuous life, the *wrong done him* would be better described as an *outrage* than an *injury*. The law

does not hold a husband in fault for placing in her father's house a wife, who, before marriage, practiced upon him such a deception that his life would be intolerable were he forced to concede her conjugal rights after the discovery of the fraud. In *Tew* v. *Tew* the jury found, in response to issues submitted to them, that the wife was not guilty of adultery, as charged in the complaint, before she was driven from her husband's home, but was guilty afterwards. The separation on the part of the husband was justified in the complaint on the ground that she had previously committed adultery, and when the jury found that charge to be false, the Court held that the husband was not the injured party, and after depriving his wife of support, protection and conjugal association without cause, could not claim the right, given only to one not in fault, to have the marriage contract annulled, because, when deserted, without cause, she fell under temptation.

A wife who is abandoned by her husband, is not now left by the law in so helpless a conditon as before the acts of 1869, 1874 and 1879 (*The Code,* section 970 and 971) were passed, for if he be within the jurisdiction of our Courts, and able to do so, she can compel him to provide her adequate support, both for herself and children. In the case at bar the defendant, so long as she stood in the legal relation of wife, could invoke the aid of the Courts, and ask suitable provision for her maintenance out of the plaintiff's estate or earnings. One of the reasons for excusing the wife's moral delinquencies, when separated from her husband, no longer exists, when to be deserted by a husband does not necessarily mean to be deprived of pecuniary assistance from him.

A party who asks the Court to grant a divorce from the bonds of matrimony, is not bound to set forth, or prove as a prerequisite to granting the prayer of the petition, the negative averment, that he has not himself been guilty of adultery, or is not in fault. In *Edwards* v. *Edwards,* Phil. L.,

534, Chief Justice PEARSON suggests that if such a " test oath " were imposed, it might prove good policy, as it would force a petitioner to purge his conscience and probably prevent a great many applications for divorce. The plaintiff is not held bound to anticipate and negative in advance all grounds of defence to the action he brings, and petitions for divorce do not constitute an exception to the general rule. *Edwards* v. *Edwards, supra; Horne* v. *Horne,* 72 N. C., 530; *Toms* v. *Fite,* 93 N. C., 274. The demurrer was properly overruled.

Affirmed.