TERISA E. PAGE v. JOSEPH B. PAGE.

(Filed 11 December, 1912.)

**1. Marriage and Divorce—Misconduct of Plaintiff.**

When the misconduct of the complaining party in an action for divorce *a mensa et thoro* was calculated to and reasonably did induce the conduct of defendant, relied upon in the action, he or she, as the case may be, cannot take advantage of his or her own wrong, and the decree of divorcement will not be granted.

**2. Same—Alimony Pendente Lite—Main Relief—Questions for Jury —Practice—Appeal and Error.**

When in an action for a divorce *a mensa et thoro* brought by the wife a motion for alimony *pendente lite* is made, and it appears that she herself is in fault, and that her own misconduct brought about the results complained of, the motion for alimony should not be granted, leaving the issues on the main relief sought for the determination of the jury at the trial; and it appearing in this case that the defendant had placed the children of the marriage with his parents for their benefit, and that the lower court had ordered that the plaintiff should see them at certain intervals, the decree is affirmed in that respect, and reversed as to the allowance of attorney's fees and alimony *pendente lite.*

APPEAL by defendants from *Foushee, J.,* at April Term, 1912, of POLK.

This is an action for divorce *a mensa et thoro,* and was before the court below at the last term, on a motion for alimony *pendente lite,* which was heard upon the complaint and answer, read as affidavits, and also upon oral testimony taken before the court. The judge announced that in considering the matter he would accept the defendant's testimony as true, and we will so treat it in this Court. Before the taking of testimony had closed, the defendant's counsel stated that he had a number of witnesses present in court, by whom he proposed to prove that the plaintiff was cross, disagreeable, and erratic, and that she had often left home without cause or provocation on his part, and that she was so irritable, disagreeable, and erratic as to keep his children continually in a state of consternation and fear, to all of which the defendant had testified. The judge refused to hear this evidence, on the ground that it only corroborated the de-

fendant and that it could not change his opinion, and that because of the crowded condition of the docket he had no time to hear it. The judge found the following facts:

1. That the plaintiff and defendant were married 18 July, 1895, and lived together until the month of June, 1911; that the plaintiff is 38 years of age, and the defendant 45; that they have two children, Paul and Eva, aged 12 and 4 years.

2. That the plaintiff is a weak, delicate woman, nervous and hysterical; that she has never been strong; and in September, 1910, went to the hospital for treatment; that several doctors prescribed for her during her married life, and one of them told defendant that if something were not done for her that she might lose her mind; that another physician cautioned her husband that she must not be permitted to do any hard labor, and he must not let her lift even the weight of a coffee-pot; that the defendant did not provide her with a cook or laundress all the time, and she had to do some of the cooking and some of the washing; that plaintiff and defendant were members of the Baptist Church, having been reared therein, but about five years ago the plaintiff joined the Holiness Church, and since that time there has been friction between plaintiff and defendant, the latter not being willing for his children to go to the Holiness Church; that plaintiff's moral character is good.

3. That defendant is a hard-working, industrious man, engaged in farming, and worth from $8,000 to $10,000; that he has always lived close and has accumulated property; that defendant thought his wife was obstinate and unreasonable; that in June, 1911, the defendant took his two children from his and plaintiff's home to the home of his parents at Tryon, four or five miles distant, and left them there, and since that time has declined and refused to permit plaintiff to see them; that plaintiff has tried four times to see the children, and on her last visit defendant's parents ordered her away and threatened to have her arrested by the town policeman; that a few Sundays before he took his children to his father's, plaintiff was preparing to go to her own church and had gotten the little girl dressed and ready to go, when defendant forbade her taking the little girl with her and forcibly prevented her from going with her mother;

that defendant did not provide any buggy for the plaintiff to ride in to church, but left her to ride on a loaded wagon or walk, as she felt inclined; that defendant gave as his excuse that he had to use the buggy himself, and his wagon had to go to Landrum, where the plaintiff's church was situate.

4. That while the court does not believe that the defendant was intentionally unkind and cruel, yet his wife's condition was such that the result of his treatment was to render her life burdensome and her condition intolerable.

It is, therefore, ordered that the defendant pay to the plaintiff the sum of $50, as an allowance for counsel fees, the same to be paid within sixty days; also that he pay $25 per month, as alimony *pendente lite,* to begin with 1 May, and to continue until the further order of this court. It is further ordered that plaintiff be permitted to see her children on the second Sunday of each month between the hours of 9 A. M. and 5 P. M.

Defendant excepted to this order and appealed.

*S. Gallert for plaintiff.*
*Smith, Shipman & Justice for defendant.*

WALKER, J., after stating the case: The facts found by the court bear a very different aspect when read in connection with the testimony of the defendant. The court has acquitted the defendant of any intended wrong, and when all of the facts are considered, he was guilty of no wrong at all. The true significance of the facts, as found by the court, does not appear until we have heard all of the defendant's version, which we are to consider as true, according to the ruling of the court. The parties had lived together as man and wife for many years, and they had two children of their marriage, whose tender years required that they should receive careful nurture and admonition, and this, it seems, they did not get from their mother. We are to understand that she was "irritable, disagreeable, and erratic, and kept her children continually in a state of fear and consternation," for the defendant so testified, the judge has said. And to more did he testify. It appears, from what he said of this unfortunate domestic tragedy, that the plaintiff is of a testy disposition, "cross and ill-tempered," and exceedingly sen-

sitive and exacting. We would not be willing to call her a virago or a termagant, even if the testimony shows that she was unruly and somewhat turbulent at times, for that would be harsh and unseemly, if not uncharitable, but prefer to use kind and gentle words, though her husband's evidence, which we are to take as true, is strongly against her and does not present her to the Court in a very favorable light. There is nothing in the case to impeach the moral character or integrity of either one of the parties. The whole difficulty seems to have sprung from the wife's infirmity of temper, and we are not at all surprised that the court would not impute any intentional wrongdoing to the defendant. The three allegations of wrong are that she was weak and was required to work contrary to the advice of her physician; that she joined the Holiness Church and defendant would not permit the children to attend the church, which caused friction between them, and that he would not provide her with a buggy in which to ride to her church, and she was compelled to ride on a wagon, and, lastly, that defendant took the children from her and placed them in his old home and under his mother's care and guardianship.

The defendant, in his testimony, gives a circumstantial account of this family dispute, and it appears therefrom that the plaintiff was physically strong and able-bodied, and performed her household duties without complaint and without any apparent injury to herself. Her husband employed cooks, but she interfered with them and drove them off. He says that he never mistreated her, never drove her away or ordered her to go, though she had ordered him to leave home. She did just as she pleased, and insisted on doing it. She struck him with the dish-rag when he was doing no more harm than looking after the tax-books. She was always contrary and always opposed anything he wished to do. The little boy wanted to hoe for him, and she objected and became very mad. She refused to cook, interfered with the women employed to cook, and made them leave, and defendant had to cook, and when he did, she would cook afterwards. She interfered with the washerwomen. He walked to Mill Springs to hire a hand, when there were others nearer who could have been employed, but she was not satis-

fied. He said something about darkies she had hired, and she jerked his hat off his head and called him a "stinking, low-down rascal." He then went out to see about the horses, and she followed him, and finally locked the door of the house, so that he could not enter, and he got in through a window and slept in a front room. This was repeated the next day. He called in every doctor in the county when she was sick, and had to change them several times to please her. She went to the hospital with his consent and at his expense. She would vilify his mother and preach a while—preached all day long to his aunt; and she would preach and then abuse him, saying that he was doomed to hell. These are only some of the things that were said and done. It is not necessary to detail all of them. He testified that he had never provoked this conduct towards him, had always provided a way for her to attend church and had always been kind to her. Her spells were worse sometimes than they were at others. One of the doctors said there was something wrong with her mind, and others that she was nervous.

Our conclusion is, from all the facts, that the plaintiff has shown no grounds for a divorce from bed and board, and consequently no right to alimony pending the suit. Upon the facts, as we view them, the defendant was not at fault in placing his children in the custody of his parents, where they could receive a mother's care and attention. It is shown that they were placed there for that purpose. We see no sufficient proof of physical weakness, though there is some tending to show mental weakness or an abnormal condition of her mind. It seems that if defendant has laid his hand upon her, it was more in kindness than in anger. He supplied her every want. It is evident that she was nervous and sensitive, and magnified and exaggerated everything he did. The separation is due more to her misconduct than to anything that he may have done. He appears to have been very patient and forbearing, under trying circumstances. She received proper medical attention and he employed servants sufficient in number to do their work, if she had not interfered with them.

If the cruelty set up as a ground of divorce was provoked by the misconduct of the complainant, a divorce will not be granted. 14 Cyc., 631. If his conduct had been such as to entitle her to a divorce, but was induced by the continued exasperation and violence of the wife, or other misconduct on her part, the same result would follow. There was no retaliation by the husband in this case, and certainly no excessive retaliation. Their domestic infelicity is apparently all due to the wife's misconduct. It is settled by our decisions that, where the wife is the aggressor and by her conduct provoked that of her husband, of which she complains, and it was calculated to do so, it is a bar to her application for a divorce and for alimony. *Whittington v. Whittington,* 19 N. C., 64; *Foy v. Foy,* 35 N. C., 90; *Setzer v. Setzer,* 128 N. C., 170; *Tew v. Tew,* 80 N. C., 316; *House v. House,* 131 N. C., 140. No one will be allowed to take advantage of his or her own wrong. This maxim was applied to a case of divorce by *Judge Pearson* in *Foy v. Foy, supra.* In the words of the statute, Code, sec. 1285; Revisal, sec. 1562, the application for the divorce must be made "by the party injured," and these words were construed in *Steel v. Steel,* 104 N. C., 631, to mean that neither of the spouses is entitled to divorce if his or her marital default provoked or induced the alleged misconduct of the other.

If the plaintiff will exercise a little more self-control and forbearance and perform her household duties as becomes a dutiful wife, and exhibit a little more consideration for her husband, and real affection for him and her children, the present distressing situation will soon be changed, if not reversed, and her home and her life will become brighter and happier.

We may reproduce here what was so well said by *Justice Rodman* in the samewhat similar case of *Miller v. Miller,* 78 N. C., at p. 108: "We cannot think the defendant's conduct, however reprehensible, was such 'indignities' as was intended to be covered by the statute, or was calculated to render the condition of any reasonable woman 'intolerable, or her life burdensome.' This is not a case in which the law ought to interfere to sanction, and perhaps perpetuate, the separation of a married pair who may again unite without impropriety, and with-

out the loss of self-respect on the part of either, and who, taught by experience, may live henceforth happily together. An English poet once gave advice to husbands, which Lord Chatham made immortal, even if its own good sense had not otherwise served to make it so, by quoting it in one of his great speeches on the policy of Britain towards America. The advice will equally teach wives how to manage their husbands:

> " 'Be to his faults a little blind,
> Be to his virtues very kind,
> And clap your padlock on his mind·!' "

It is not intended to imply by the quotation that defendant has been doing anything which the law would denominate as misconduct. But whether he has or not, the advice to the wife is not out of place.

We do not concur with the court in its conclusion that, assuming the defendant's testimony to be true, the plaintiff is entitled to alimony. On the contrary, it appears therefrom that there was no cruel or barbarous treatment and nothing whatever calculated to make the condition or life of an ordinary and normal woman either intolerable or burdensome. The defendant made the best he could of a bad situation, when his patience and forbearance must have been sorely tried. Both parties will profit by remembering that, "Our remedies oft in ourselves do lie."

The order granting alimony will be vacated and the order permitting the plaintiff to see her children at the intervals named will remain in force. It may be modified, if need be, in the discretion of the court from time to time, and as the exigencies of the case may require. *Setzer v. Setzer,* 129 N. C., 296.

Our decision does not prevent a trial of the issues. The plaintiff hereafter may allege and establish a better case than she has in the present record, and one entitling her to a divorce, but there is no such case now presented.

Error.