KENNERLEY, PLAINTIFF AND APPELLEE, *v.* KENNERLEY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action for Divorce.

No. 2334.—Decided July 14, 1921.

DIVORCE—CRUEL TREATMENT—RECRIMINATION.—A charge of assault and battery upon the wife by the husband and of his intimacy with another woman to whom, notwithstanding the wife's protests, he paid such attentions as would

arouse suspicion, constitutes the defense of recrimination which defeats the actions for divorce brought by the husband on the ground of cruel treatment.

ID.—ID.—ID.—Divorce is a remedy for the relief of an injured spouse who has not been the voluntary procuring cause of the acts relied upon to invoke it, and it is not available for one who, disregarding the solemnity of the nuptial vows, prompts the other party to the marriage to conduct which would be inexcusable if committed against a husband or wife who was honestly endeavoring to sustain the marriage relation; therefore, where the misconduct of the defendant is the result of the ill conduct of the plaintiff, the court will not decree a separation.

ID.—ID.—MALICE—EVIDENCE.—In order 'that the charge of adultery or of the transmission of a venereal disease made in actions formerly brought and abandoned by the defendant may constitute legal cruelty, it is necessary to show that such charges were made maliciously.

ID.—In this case it was held that in accordance with the complaint and the evidence the plaintiff has no cause of action against the defendant for divorce on the ground of cruel treatment.

The facts are stated in the opinion.

Messrs. J. Sifre, Jr., and J. Martínez Dávila for the appellant.

Messrs. O. B. Frazer and J. de J. Tizol for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint for divorce in this case was summed up by the appellee substantially as follows: That the defendant for some time past had continually insulted the complainant in public and in the presence of his friends and business associates, calling him various obscene names; that the defendant had filed two complaints for divorce against the complainant and had dismissed the same; that these two complaints were founded on the unjustified charge that complainant had infected defendant with a venereal disease and that she made the same statement to various friends and acquaintances to the great injury of complainant; that the defendant was continually following the complainant into the houses of his friends and whereever he went, insulting him; that the defendant did everything in her power to secure the conviction of the complainant for an alleged attempted manslaughter, a felony of which he was acquitted by a jury; that the defendant bribed three telephone girls of the central

station to connect her telephone with that of the complainant in order that she surreptitiously might hear any conversation that complainant had with any other person, and that for a number of years previous to the institution of the suit the defendant had carried on a systematic persecution of the complainant.

As to the matters of defense the appellee is right, formally, at least, in saying that the appellant bases her answer and her defense on matter or matters of recrimination, and we agree with the appellee that in this court the appellant made little or no attempt to attack the case of cruelty against her made out by the said appellee.

The District Court of San Juan rendered judgment for the complainant and in its opinion, after reviewing the pleadings, said:

"It has been proved that at different times the defendant charged the complainant with having infected her with a venereal disease (syphilis), a charge which is shown to have been made by the defendant under oath in her suits for divorce as admitted by her at the trial, without producing any evidence in support of her charge, whereas, on the other hand, the complainant proved that he had never been affected by that disease and therefore could not have transmitted it, thus demonstrating that the charge was unfounded.

"It has also been shown that, influenced by jealousy and with the aid of the police, the defendant persecuted the complainant in a public and notorious manner, exposing him to ridicule.

"It was shown that in her anxiety to overhear the conversations between her husband and a certain lady she induced three telephone girls to connect her telephone with the telephone of the said lady and of the complainant.

"In like manner the court finds that it has been proved that as a result of the defendant's representations in the office of the district attorney of San Juan, the charge of aggravated assault and battery made by the police against the complainant in the Municipal Court of Río Piedras was referred to the district attorney's office and that after an investigation the assistant attorney defined the offense as an attempt to kill, extending the charge to include Mrs.

Winthrop, defendant thereby exposing her husband to conviction for a felony, to answer which charge he was compelled to appear before the court and undergo a trial by jury, with the result that he was acquitted.

"It is also shown that during the pendency of the charge against her husband for felony the defendant entered his residence, irritating and insulting him, and made another charge of aggravated assault and battery against him before the assistant *fiscal* of the district, thus causing his further arrest and giving rise to his subsequent release under bail bond, only to have the court dismiss the case later upon motion of the district attorney.

"The defendant bases her defense on the theory of recrimination.

"In the opinion of the court the defendant has not shown that the relations between her husband and Mrs. Winthrop amounted to adultery; social and friendly relations, however intimate, are not sufficient to raise in our mind a conviction of the existence of acts of adultery; again, the evidence produced by the defendant to show where her husband passed the night of September 7, 1918, is not deemed sufficient by the court. The evidence consisted of the testimony of the defendant and of a member of the insular police, which is offset by the testimony of the district chief who stated that they searched the house but did not find the complainant; the defendant and the police officer testified that at daybreak they saw complainant appear on one of the balconies of the house they searched; the testimony of the defendant has been contradicted frequently by her own witnesses, especially by the assistant attorney, and in view of the manner in which she testified regarding the times she had been in the office of the district attorney and her reasons for going there, the court is necessarily compelled to view her testimony with certain circumspection, especially when the same is not sufficiently corroborated."

Assuming only for the time being that the appellee made out a case of cruel treatment against the appellant, we shall consider the alleged defense of recrimination. The defendant-appellant, to maintain her said defense, set up an assault and battery committed on her person on May 18, 1919, public and intimate relations with another woman on the part of the complainant, and his desertion of defendant on or about the date of the said assault and battery referred to. The

complainant was convicted of this assault and battery and although he gave testimony tending to ameliorate it and its consequences to the defendant, yet it is evident from the record and the opinion that this assault and battery actually took place.

The appellant herself does not insist that the appellee was guilty of adultery; the court made a finding against such a conclusion and we do not find that the appellant made out a case of recrimination on the ground of adultery. Nevertheless, the conclusion from the record and the finding of the court is inevitable that the friendship between the complainant and another woman was very marked indeed, that he was assiduous in his attentions to her and that he was very frequently in her company under circumstances that were bound to arouse suspicion, all despite the protests and objections of his wife.

The authorities hold, as appellee points out, that the defense of recrimination must be of such a nature as to entitle a defendant to an independent divorce. It may or not be true, as suggested by the court below and the appellee, that a single act of violence would not be ground for divorce, but we think that this act of violence coupled with the complainant's general conduct to his wife, especially in relation to this other woman, and the subsequent desertion of defendant, were all acts tending in their general bearing to make a case of cruelty equal in degree at least to the general trend of cruelty set up in the complaint and proof of the complainant and sufficient to defeat the action, supposing the complaint sufficient.

The appellant specially sets up the desertion as a matter of recrimination. Appellee answers on the theory of interruption by reason of the divorce suit filed by him. Neither party has presented authority on the matter of interruption. Necessarily, if appellee did not make out a case of cruelty, the period for desertion would run, but of course if there is

no case of cruelty it is unnecessary to consider any particular matter of recrimination. We shall not, in this connection, discuss at great length the alleged matter of condonation by the defendant's abandoning the two suits filed by her, except to hold that the dismissal of a suit would never prevent a defendant in a divorce proceeding from defeating a judgment for divorce where the defense was the misconduct of the complainant. The state has a strong interest in maintaining the marriage relation and will not apply an estoppel or other bar against a defendant to clear the way to a divorce.

As we have said, the appellant in her brief based her defense on the theory of recrimination, which requires, according to the authorities, facts to be proved which would give her independently a ground for divorce. The courts, however, in a divorce case, will generally scan the whole proceedings to verify if the complainant is entitled to a divorce. Misconduct of complainant constituting a defense on the ground of provocation, justification or excuse, need not be such as in itself would entitle defendant to a divorce, thus distinguishing it from misconduct constituting the defense of recrimination, which must of itself be sufficient as a ground for divorce. 19 C. J. 77, and especially cases under notes 54 to 57.

The appellant, while not putting her defense distinctly on the ground of provocation, in her answer sets out the facts and in her brief quotes from a decision of this court in the case of *Fernández v. Hernández*, 8 P. R. R. 229, as follows:

"A spouse who resorts to so important a remedy as that of divorce, sundering the marriage bond and destroying a home born of mutual love, in which there now are innocent children, should be free from all fault, a real victim who had exhausted all friendly means to arrest the evil at its inception."

The answer simply sets up the facts from which a court

might gather the grounds of provocation or excuse and they were all either antecedent to or contemporaneous with the alleged acts of cruelty of defendant. We find strong proof in this case that the procuring cause of the cruelty as set up in the complaint, or so much of it as might perhaps be considered cruel, was the conduct of the complainant and especially his relations with another woman, to which we have referred.

*Boeck* v. *Boeck* (Idaho), 161 Pac. 576, was a case where the court found that the wife's attitude towards her husband was cold, distant, disagreeable and nagging and was calculated to and did prompt him to certain acts which, in the absence of misconduct upon her part, would have amounted to extreme cruelty as defined by the statute. Said the court:

"Divorce is a remedy for the relief of an injured spouse who has not been the voluntary, procuring cause of the acts relied upon to invoke it, and it is not available for one who, disregarding the solemnity of the nuptial vows, prompts the other party to the marriage to conduct which would be inexcusable if committed against a husband or wife who was honestly endeavoring to sustain the marriage relation."

In *Barber* v. *Barber,* 168 App. Div. 212, where the court below had found in favor of the wife, the judgment was reversed, the court saying that where the misconduct of the defendant is the result of the ill conduct of the plaintiff, the court will not decree a separation. *Jones* v. *Jones,* 64 So. 4, is a similar case, the court finding the wife guilty of such provoking misconduct as to foreclose her right to relief.

In *May* v. *May,* 39 So. 679, the court said:

"Cruelty is frequently a term of relative meaning and where a wife has brought upon herself the ill-treatment of which she complains by her own misconduct the blame in a great measure rests with herself and it would require a much stronger case than if her conduct had been blameless."

See also *Vose* v. *Vose,* 147 N. W. 634; note to *Thompson*

v. *Thompson,* 5 A. L. R. 719, showing cases where conduct endangering life will not be sufficient for divorce if such conduct was provoked by complainant, and see also the notes to 19 C. J. 77, *supra.*

A man or woman may be guilty of considerably less than actual adultery and on this theory of provocation or excuse still give sufficient ground to prevent the obtaining of divorce for cruelty. *MacAllister* v. *MacAllister,* 75 N. W. 256, was a case where a husband had a reputation as a singer and was frequently invited out. His wife objected to his association with some of the women and especially those with a bad reputation. He was away from home a great deal needlessly on account of some of these associations. The record showed and the court made the comment that on several occasions his conduct was such as he must have known would severely test his wife's belief in his fidelity as a husband. From the facts the court concluded that while marital infidelity did not exist, yet his action for divorce on the ground of grievous mental suffering because of the wife's charges to her children and others could not prevail. But for his misconduct the charges against her would have entitled him to a divorce.

*Rutledge* v. *Rutledge* (Mo.), 139 S. W. 1180, was a case where a husband began and kept up relations with a female cousin against the repeated protests of the wife and under circumstances to invite suspicion. The divorce was sought on the ground that his wife had offered him indignities such as falsely accusing him of adultery, calling him names, quarreling with him, etc. The court said:

"We are convinced that the actions of the defendant on account of which plaintiff seeks a divorce 'were the natural or probable result of his own conduct and hence extenuate the defendant's acts and reduce the offensive character below the degree which the law requires to justify the separation of the marriage tie.' Owen v. Owen, 48 Mo. App. 208."

Thus, the misconduct of a complainant will reduce the degree of the offence.

In *Spofford* v. *Spofford* (Idaho), 108 Pac. 1054, the court said:

"Under the circumstances of this case, the acts proven against the respondent cannot be held to constitute extreme cruelty within the meaning of the statute. Section 2649, Rev. Codes. By this we do not mean to say that respondent's conduct in this regard is commendable, or that a man must forever endure it with patience. The appellant, however, has not been free from blame and censure. He has pursued a course of conduct toward other women which was calculated to arouse suspicions on the part of the wife and to kindle the fires of jealousy. It is fair to say that the record entirely fails to show that appellant has been criminally intimate with any of these women; it rather inclines us to the belief that he has not; but he has been indiscreet and unwise in his conduct, and he certainly owed it to his wife as well as to himself to 'avoid the appearance of evil.' It is fully as essential to domestic happiness and tranquility that the parties to the marriage contract so conduct themselves that each may be above suspicion from the other as it is to in fact be innocent of the suspicioned act."

See also *Ashton* v. *Grucker*, 48 La. Ann. 1199, 1200.

Another court has put the principle by way of provocation or excuse in the form of an estoppel, *Paige* v. *Paige*, 161 N. C. 175. To quote paragraphs from that case:

"Their domestic infelicity is apparently all due to the wife's misconduct."

"No one will be allowed to take advantage of his or her own wrong."

We may possibly be mistaken in holding that all of the acts of the defendant as charged in the complaint would have been justified by the misconduct of the complainant, but that brings us to another phase of the case. The appellee maintained at the hearing that the conjunction of the acts of the defendant constituted cruelty. He did not so much rely on any specific act charged in the complaint. In response to

the rules of this court its *fiscal* has filed a report wherein he finds among other things that the grounds of divorce set forth in the complaint have not been proved. The appellee, although the appellant did not insist on this as error, foresaw that the court would perhaps consider it *sua sponte,* as courts will do, especially in divorce cases, and therefore he treated the point.

Most of the specific matters set forth in the complaint were not sufficiently proved. Much of the controversy in the court below turned upon the question of whether the defendant had been instrumental in having a misdemeanor case against her husband converted into a charge of attempted manslaughter, of which charge he was acquitted by a jury. The judge below held that Mrs. Kennerley had been so instrumental, but we fail to understand this finding, as the assistant *fiscal* took the stand and several times denied that she was responsible for the graver offense being preferred. He testified that she was frequently in his office to talk about her troubles and to prefer charges of her own, thinking that the *fiscal* could help her in her difficulties with her husband, an idea common to many women, as he said, but he roundly denied that she asked for a prosecution in the particular case in question. She did set him straight on what had actually happened. She and others gave him information that led to the more serious charge. The judge, however, who was the *fiscal* at the time, thinks that she was instrumental in transferring the case. There is a little in the opinion of the court and in the brief of the appellee that would lead one to believe that the judge had something in mind which he did not spread upon the record. If he did, it is needless to speculate much, as it is unrevealed and we are limited to the record. There we find absolutely no justification for the charge that the wife requested that the more serious charge should be preferred against her husband. Nor can we suppose for a moment that the action of either the *fiscal* or his assistant

was determined by the act or words of the defendant. The assistant testified that he made the charge after due investigation. We are bound to believe that the *fiscal* complied with his oath and prosecuted, not because of anything Mrs. Kennerley said, but because of the examination of the witnesses, and the fact that the complainant was acquitted does not tend to show that the *fiscal* did not have reason to believe that he had a case for prosecution. Furthermore, if Mrs. Kennerley gave information to correct a false impression such as the office of the *fiscal* had, it can not be considered cruelty. It does not even show a malicious attitude of mind. We find no evidence of cruelty in this action on her part, even supposing that, believing her husband guilty, she had requested the prosecution, a fact not proved and not even probable.

The complaint charged that the wife had alleged in two different complaints filed by her that her husband had communicated a venereal disease to her and that such charge was false. The complaint did not set up that these charges were maliciously made. The proof, although objected to by the defendant in regard to the period testified to, tended to show that the charges were false, and the court so believed, but there was no other proof of malice other than that each time Mrs. Kennerley failed to prosecute her charge. She said she desisted because she did not want to follow up her charges and wanted her husband to come back to her. She swore to the truth of the charges and her evidence in this regard was admitted by stipulation, the parties agreeing that she would so testify. Charges like these are akin to a prosecution, criminal or civil. Said the Supreme Court of the United States in *Stewart* v. *Sonneborn*, 98 U. S. 187, much-cited case, "It is abundantly settled that no suit can be maintained against an unsuccessful plaintiff or prosecutor unless it is shown affirmatively that he was actuated in his conduct by malice or some improper or sinister motive. * * * Not-

'withstanding what has been said in some decisions of a distinction between actions for criminal prosecutions and civil suits, both cases at the present time require substantially the same essentials.'' See also *Paganacci* v. *Lebrón,* 24 P. R. R., 743. In 19 C. J. 51, it is said that ordinarily false charges of adultery made by either the husband or the wife maliciously and without proper cause constitutes legal cruelty. In order, then, to be legal cruelty false charges of adultery or communicating a venereal disease, practically the same thing, must be shown to be made maliciously. There was no such proof in this case.

The charges of having bribed three telephone girls to connect defendant with the telephones of the complainant and the other woman is one of the acts of cruelty and persecution charged against the defendant. Baldly, we see no act of cruelty toward the complainant. It was at the most undignified curiosity promoted by jealousy, but there is nothing in the evidence that the defendant was hurt or prejudiced by this conduct on the part of the defendant. It is not shown that Mrs. Kennerley made any statement to the telephone girls when she bribed them, supposing she did bribe them, a fact denied by her. The bribery was not proved but solely the superintendent of the Telephone Company, under objection of defendant, made a statement that at the request of Capt. Kennerley he had an investigation made, as a result of which two girls were discharged. He did not make the investigation himself and he did not apparently even talk to the discharged girls. From this investigation on hearsay, the discharge of the two girls, and some proof that the telephones actually were so connected, the court below found as a fact that Mrs. Kennerley had bribed the girls. We do not believe that the court ordinarily would convict Mrs. Kennerley of bribery or similar charge on any such evidence.

Complainant gave evidence tending to show that defendant and her mother came to his room and at the point of a

pistol she demanded he divide the matrimonial property, which, defendant maintains, was mainly contributed by her. There is considerable evidence that money matters played an important part in the disagreements of this couple. This particular supposed act of cruelty was not alleged in the complaint and did not seem to inspire the complainant with a great fear as he disarmed his wife, and the act alleged apparently made no impression upon the judge below, as he failed to mention it.

There are other specific charges in the complaint that were either not proved or not commented on by the court or the appellee.

There remains the general charge of cruel conduct in words in telephone calls and so carried on for a number of years. The court said that this conduct began before 1918, but we find no evidence of very strained relations before that year and the complainant himself said that the first serious disputes began in 1918. Some differences the parties had in 1917, but Mrs. Kennerley returned to the United States and the whole unpleasant situation was brought out on her coming to Porto Rico in April, 1918. After that date there is considerable evidence of conduct that was disagreeable and irritating and probably not the proper conduct of a wife to her husband under normal circumstances, but we do not find the conduct of the wife sufficient for a divorce on the ground of cruelty. Although the complaint speaks thereof there is very little testimony that the defendant continually insulted the complainant in public and in the presence of his friends and business associates, calling him various obscene names, or that she was continually following the complainant to the houses of his friends and wherever he went, insulting him. There was one such case of insult in his house, but the testimony was so conflicting in this regard that we can not find the cruelty charged. We have omitted to mention another specific act of cruelty, namely, that the defendant and a po-

liceman penetrated into a house where the complainant was supposed to be and had it searched. This was confessedly the house where the other woman was living, but the testimony fails to reveal that either Mrs. Kennerley or the policeman so conducted themselves as necessarily to reflect on complainant. In the absence of some specific act or word of Mrs. Kennerley to somebody else other than the policeman who was assisting her, we do not find an act of cruelty. We can not find in any of the acts of the defendant that element of malice or cruelty that would ordinarily entitle a complainant to a divorce and this independently of the question of provocation, which must also play a part. Of course, we include in this finding that none of the specific charges was proven.

This was a case where the complainant relied on specific charges to bring out the general charges. Each of the specific charges failing, we find the general charge was insufficiently proved.

The judgment must be reversed and the complaint dismissed.

*Reversed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.