BARBER v. BARBER.

(Supreme Court, Appellate Division, Second Department.   May 7, 1915.)

1. HUSBAND AND WIFE ⬅3—PERSONAL RIGHTS—CHASTISEMENT.
    A husband, who repeatedly requested his wife not to interfere with him or provoke quarrels in the presence of the child, on her persistence in interference and her refusal to leave the room, had the right to eject her, using only such physical force as was necessary; and where the wife was clinging to him and screaming, following a request for money, had the right of "gentle restraint"; and, when he was assaulted by her, had the right to use such force as was necessary for his self-defense.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 5–8; Dec. Dig. ⬅3.]

2. DIVORCE ⬅27—CRUEL TREATMENT—STATUTE.
    Under Code Civ. Proc. § 1762, subds. 1, 2, authorizing a divorce or separation on the ground of cruel and inhuman treatment and for such conduct as renders cohabitation unsafe and improper, there must be either actual violence committed with danger to life, limb, or health, or a reasonable apprehension of such violence, affecting the safety and propriety of cohabitation, and violence invited by a party's own physical violence will not avail; and hence a husband's exercise of force in trying to make his wife pick up a knife which she had thrown on the floor with an oath was not conduct or treatment justifying a decree for the wife.
    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. ⬅27.]

3. DIVORCE ⬅27—CRUELTY—MISCONDUCT OF OTHER SPOUSE.
    In a wife's action on the ground of cruel treatment, where it appeared that plaintiff was emotional and hysterical, was so unkind to her husband's sister as to compel him to send her away, was intemperate in conduct and lacking in self-control, had apparently threatened the life

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of their child, and had taught the child to slander its father, she was not entitled to a separation; since, where the misconduct of the defendant is the result of ill treatment by the plaintiff, the court will not decree a separation.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. ☞27.]

Appeal from Special Term, Westchester County.

Action for divorce by Tusi Bradley Barber against Arthur W. Barber. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, and RICH, JJ.

George W. Wickersham, of New York City, for appellant.
Ellery E. Albee, of Dobbs Ferry, for respondent.

JENKS, P. J. The parties upon the witness stand give such different versions of the acts charged that the physical violence of the defendant was either in offense or in defense (save in one incident), and the injuries received by the plaintiff were designed or accidental, as one or the other tells the whole truth. The learned Special Term described the defendant as of more than ordinary ability, energy, and industry, precise, methodical, and masterful, characteristics which do not bear as directly upon the accuracy of testimony as do those of the woman, who is described as emotional and hysterical. A reading of the evidence indicates that she was often intemperate and extravagant in statement, prone to gloss over her own faults and to magnify those of the defendant. I think that the versions of the defendant are more credible. I reach this conclusion, not alone from these characteristics of the plaintiff, but also from the naturalness of the defendant's testimony and from his corroboration that crops out in her testimony. The parties are educated gentlefolk, who married rather late in life. The man appears as a hard-working lawyer of excellent habits. He pressed domination too far, and she demurred or resisted. There was trouble over money matters, for his income was small and his burdens heavy. His style of living required a rigid economy which to her seemed parsimony. She, who had earned her own living before marriage, chafed at her loss of independence. He was not as considerate as he should have been, and often neglected amenities that might have conciliated her. His rule irked her. He had little tact, and she had much temper. He did not neglect her or her welfare, and she remained faithful but fault-finding. Her rebellion of temper and tears found an ally in her mother, whom the defendant supported as an inmate of the house. But they grew apart, and finally the plaintiff left his house and refused his entreaties to return.

Her decree rests practically upon three acts of alleged violence. My conclusion is that, in all three, she was the provoking party and in two she was the aggressor. On the first occasion she provoked her husband by throwing a knife from her hand onto the floor, with an oath. On the second occasion she assaulted him, and he but warded off her blows. And on the third occasion she attempted to force mon-

ey from him forthwith in the morning, which money he promised to fetch to her that night. And she did so by clinging to him so as to impede his way out, and by loud screams. There were no personal injuries on the first occasion, those of the second occasion were accidental and due to his self-defense, and those of the third occasion she brought upon herself by resisting his attempt to free himself from her grasp and to stifle her screams, which might scandalize the passersby and the neighbors. The only occasion when the defendant laid unkind hands upon the plaintiff without justification was that of her refusal to pick up the knife. Then he sought to compel her physical obedience by force, but not by chastisement. I think that he was wrong to go so far in such a trivial matter, even though she had the habit of throwing things upon the floor and had provoked him with a curse.

[1] On the second occasion, the defendant was training their little child, but had done nothing to justify the plaintiff's interference, which encouraged the child's disobedience. And the court found that "the defendant was unable * * * to complete his task with the child, to wit, its training, while the plaintiff remained in the room," and that he "had previously repeatedly requested the plaintiff not to interfere with him or provoke quarrels with him in the presence of the child." When she refused to leave the room and remained to persist in interference with a proper exercise of parental authority, he had the right to eject her, and the proof is that he used physical force only for that purpose and only so far as it was necessary. See Schouler on Husband and Wife, § 68; Gorman v. State, 42 Tex. 221.

[2] On the third occasion she was seeking to obtain money by the antics of a mad woman, and he had at least the right of "gentle restraints" for the time being. Kent's Com. 181; Schouler, supra, § 69. Whenever he was assaulted, he was justified in using such force as was necessary for self-defense. Schouler, supra, § 68; People v. Winters, 2 Park. Cr. 10. The violence which she invited by her own physical violence should not avail her in her suit. Bishop, supra, well says:

"Violence inflicted in a mutual contest, or ordinarily when the party complaining provoked it, is no cause for judicial interference."

. Thus it appears that the only violence which she did not directly provoke by resort to violence first is that which marked the knife incident. But the conduct contemplated by subdivisions 1 and 2 of section 1762 of the Code of Civil Procedure is that which affects the safety and propriety of cohabitation. I think that there should apply in this case the definition adopted and approved by Church, C. J., in Kennedy v. Kennedy, 73 N. Y. 369, as "concise and comprehensive," namely:

"There must be either actual violence committed with danger to life, limb or health, or there must be a reasonable apprehension of such violence."

See, too, Lockwood v. Lockwood, 2 Curt. Ecc. 281, Dr. Lushington; Ford v. Ford, 104 Mass. 198.

Although the statute subdivides cruel and inhuman treatment, and "conduct as may render cohabitation unsafe and improper," yet Kent,

in his Commentaries (14th Ed., vol. 2, p. 126), in discussion of a similar statute, says that probably the word "unsafe" may mean the same thing as the reasonable apprehension of bodily hurt in the English cases. And the Vice Chancellor, in Mason v. Mason, 1 Edw. Ch. at 291, notes this view of Kent and expresses the court's inability to distinguish cruel and inhuman treatment from conduct that is unsafe and improper. See De Meli v. De Meli, 67 How. Prac. at 27, and authorities cited.

Some light is thrown upon the nature of these quarrels and disputes by the answer of the plaintiff's mother as to the outcome of one of their differences, when she said, "Why, they made it up as usual." Referring to this one occasion when the plaintiff was the first to resort to physical force, the plaintiff testifies that she tried to forget the incident, that "if he had been decent it would have all blown away," and she cannot recall whether she stayed with the defendant on that very night. Surely there was nothing in this episode that justified a finding of the cruel and inhuman treatment or of the unsafe and improper conduct contemplated by the statute. Nor was the conduct of the husband foundation for apprehension of cruel and inhuman treatment or for belief that cohabitation would be unsafe and improper as justified an invocation of the court. The plaintiff has not sustained the burden of proof that was upon her. Bishop on Marr., Divorce & Sep. vol. 2, § 762; Stewart on Marr. & Divorce, § 272.

[3] Further, when the misconduct of the defendant is the result of the ill conduct of the plaintiff, the court will not decree a separation. Rose v. Rose, 52 Hun, 154, 4 N. Y. Supp. 856; Moulton v. Moulton, 2 Barb. Ch. 309; Hopper v. Hopper, 11 Paige, 46; Bedell v. Bedell, 1 Johns. Ch. 604; Deisler v. Deisler, 59 App. Div. at 211, 69 N. Y. Supp. 326. If any differ from me in my view of the facts as they make for the defendant, and is inclined to find that the truth is more with the plaintiff so far as the defendant's demeanor is concerned, still I believe that it will not be denied that the wife's conduct should bar her from this decree. The learned trial court was clear upon this feature, but did not lay the stress upon it that I do. Not only did it declare that the plaintiff was emotional and hysterical, for which she is rather to be pitied than condemned, but it found that she was most unkind to the defendant's sister while an inmate of the house and dependent on him for support, made her place there intolerable by abuse, compelled the defendant to send her away, which he did for peace, and thereby unduly and unjustifiably increased his financial burdens. It found that the plaintiff was intemperate in conduct and lacking in self-control; that, with the connivance of her mother, on two occasions she took the child into a closed room and opened the gas cocks; and that when interrogated on this subject at the trial she refused to answer on the ground of possible incrimination. It found that she removed money from the defendant's pockets at night; that she taught the child to slander its father in its prayers, and persisted in so doing despite the defendant's requests that she should not. It found that she, during the course of her married life, showed constant and ostentatious preference of her mother over her husband, and refused to

have her dismissed. It found that the mother, although aware that her presence was extremely distasteful and annoying to the defendant, refused to be separated from her daughter and to live elsewhere, and that her presence contributed much to render the married life of the parties "chronically inharmonious." In its opinion the court says it is clear that the plaintiff "is by no means free from fault for the infelicities of their married life," and that after their unhappiness and incongruity became established she lost few opportunities to irritate him.

Such conduct, day in and day out, is more than of the petty annoyances of married life; it may not rise to the dignity of tragedy, but it is enough to breed discord and unhappiness. "Gutta cavat lapidem non vi sed sæpe cadendo."

And yet I think that these parties are not beyond reunion, that experience may convince them of the wisdom of mutual concessions whereby their quarrels may cease and they may live together in peace under the tie which we should now refuse to sever.

The parties hereto having stipulated in open court that this case may be disposed of by a court of four, the decision is as follows: Judgment reversed, and new trial granted.

STAPLETON and RICH, JJ., concur. THOMAS, J., votes for affirmance.