KENNERLEY, DEMANDANTE Y APELADO, *v.* KENNERLEY,
DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan.
Sección Primera, en pleito sobre divorcio.

No. 2334.—Resuelto en julio 14, 1921.

DIVORCIO POR TRATO CRUEL—RECRIMINACIÓN.—El acometimiento y agresión del
esposo contra la esposa unido a la intimidad de aquél con otra mujer a la
cual a pesar de las protestas de la esposa dispensaba atenciones de índole sufi-
ciente a levantar sospechas, constituyen la defensa de recriminación por trato
cruel que hace ineficaz la acción de divorcio por trato cruel ejercitada por el
esposo.

ID.—ID.—El divorcio es un remedio para beneficio de uno de los esposos agravia-
dos que no ha sido la causa voluntaria y determinante de los actos en que se

funda para invocarlo, y no está al alcance de una persona que en desatención de la solemnidad de los lazos conyugales impulsa al otro cónyuge a observar una conducta que sería inexcusable de cometerse contra un marido o mujer que verdaderamente trataba de sostener las relaciones matrimoniales; así pues, cuando la mala conducta de la parte demandada es consecuencia de la mala conducta de la parte demandante, la separación no debe decretarse.

Id.—Prueba Insuficiente.—Para que constituyan crueldad legal las imputaciones de adulterio o de trasmitir una enfermedad venérea alegadas en demandas presentadas y desistidas anteriormente por la demandada, es necesario demostrar que tales imputaciones se hicieron maliciosamente.

Id.—Prueba Insuficiente—Causa de Acción.—En el presente caso *se resolvió:* que de acuerdo con la demanda y la prueba, las cuales se consignan en la opinión, no asiste al demandante una causa de acción de divorcio por trato cruel contra la demandada.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. J. Sifre, Jr.* y *J. Martínez Dávila.*

Abogados del apelado: *Sres. O. B. Frazer* y *J. de J. Tizol.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

La demanda de divorcio presentada en este caso ha sido resumida por el apelado sustancialmente como sigue: Que la demandada durante algún tiempo pasado había constantemente insultado al demandante en público y en presencia de sus amigos y asociados en negocios, llamándole por medio de varios epítetos obscenos; que la demandada había demandado al demandante dos veces solicitando el divorcio pero había desistido de las demandas; que estas dos demandas estaban fundadas en la imputación falsa de que el demandante había infestado a la demandada con una enfermedad repugnante y que la demandada había hecho la misma manifestación a varios amigos y conocidos del demandante con notable perjuicio del mismo; que la demandada había constantemente perseguido al demandante en las casas de sus amigos y donde quiera que iba insultándole; que la demandada hizo todo lo que estuvo en su poder para conseguir la convicción del demandante por un supuesto delito de tentativa de homicidio, un delito grave, por el cual fué absuelto por un jurado; que la demandada sobornó a tres operarias

del teléfono en la Estación Central para conectar su teléfono
con el del demandante de modo que ella pudiese subrepticia-
mente oir cualquier conversación que el demandante sostu-
viese con cualquier otra persona y que durante varios años
con anterioridad al pleito la demandada había llevado a cabo
una sistemática persecución del demandante.

En cuanto a las cuestiones de defensa tiene razón el ape-
lado, por lo menos técnicamente, al decir que la apelante
funda su contestación y defensa en la doctrina de recrimi-
nación y convenimos con el apelado de que en esta corte la
apelante hizo poco o ningún esfuerzo por atacar el caso por
trato cruel contra ella presentado por dicho apelado.

La Corte de Distrito de San Juan dictó sentencia a favor
del demandante y en su opinión, después de examinar las
alegaciones, se expresó como sigue:

"Se ha probado que la demandada imputó en diferentes ocasiones
al demandante el haberle transmitido una enfermedad infecciosa
(sífilis), alegación que bajo juramento aparece hecha por la deman-
dada en las demandas de divorcio presentadas contra su esposo, de
su admisión en el acto del juicio, sin que se aportara prueba alguna
para sostener su certeza, y en cambio, el demandante justificaba no
haber padecido nunca de esa enfermedad, y como consecuencia no
habérsela transmitido y resultar por tanto, esa alegación, una impu-
tación falsa.

"Resulta también probado que la demandada auxiliada por la
policía e impulsada por los celos, ha perseguido al demandante de
una manera pública y notoria, exponiéndolo al ridículo.

"Resulta probado que en su afán de conocer las conversaciones
que pudiera tener su esposo con determinada señora, consiguió que
tres telefonistas conectaran el teléfono del demandante y el de la
mencionada señora con el de la demandada.

"Asimismo la corte considera como un hecho probado que a virtud
de las gestiones que hiciera la demandada en la fiscalía del Distrito
de San Juan, la denuncia que la policía presentara contra el deman-
dante por un delito de acometimiento y agresión grave, en la Corte
Municipal de Río Piedras, pasara a la fiscalía y que por el asst.
fiscal, después de una investigación, se calificara el hecho de aten-
tado a la vida y se incluyera en la acusación a la Sra. Winthrop,

exponiendo a que su esposo fuera condenado por un delito *felony,* bajo cuya acusación tuvo que comparecer ante la corte y sufrir un juicio por jurado, del que salió absuelto.

"Resulta probado que en los días en que su esposo se encontraba pendiente del juicio que se le seguía ante la corte por un delito de *felony,* la demandada penetró en el domicilio de su esposo provocándolo e injuriándolo y formulando nueva denuncia contra su esposo ante el 'assistant fiscal' del distrito, por un delito de acometimiento y agresión grave, dando lugar a que fuera de nuevo arrestado, puesto bajo fianza, para que más tarde la corte sobreseyera el caso a petición del fiscal.

"La demandada basa su defensa en la teoría de la recriminación.

"La demandada no ha probado a juicio de la corte, que entre su esposo y la Sra. Winthrop hubieran relaciones de tal naturaleza que constituyeran adulterio; las relaciones de amistad y las relaciones sociales por muy asiduas que sean, no son bastantes para llevar a nuestro ánimo la creencia firme de la existencia de un adulterio; por otra parte, la prueba aportada por la demandada tendente a probar que su esposo pasó la noche del 7 de septiembre de 1918, no la considera la corte bastante. Esta prueba consistió en la declaración de la demandada y la de un policía insular, contrarrestada por la declaración del jefe de distrito, que alega que practicaron un registro en la casa y no encontraron al demandante; la demandada y el policía insular, alegan que al amanecer lo vieron asomado a uno de los balcones de la casa objeto del registro, la declaración de la demandada ha sido contradicha muchas veces por sus testigos, especialmente por el assistant fiscal, y dada su manera de declarar respecto a las veces que estuviera en la fiscalía y al objeto que allí la llevara, forzosamente la corte tiene que ver sus afirmaciones con cierto cuidado, sobre todo cuando no aparecen suficientemente corroboradas."

Suponiendo únicamente por el momento que el apelado presentó un caso de trato cruel contra la apelante, consideraremos la alegada defensa de recriminación. La demandada-apelante para sostener su referida defensa alega un acometimiento y agresión cometido con ella en mayo 18, 1919, las relaciones públicas e íntimas con otra mujer por parte del demandante y el abandono de la demandada hacia la fecha de dicho acometimiento y agresión. El demandante

fué declarado culpable de este acometimiento y agresión y aunque prestó declaración tendente a suavizarlo y a sus consecuencias para la demandada, sin embargo, es evidente según los autos y la opinión que este acometimiento y agresión tuvo realmente lugar.

La apelante misma no insiste en que el apelado fué culpable de adulterio, la corte fué de criterio contrario a tal conclusión y no vemos que la apelante mostrara un caso de recriminación por el motivo de adulterio. No obstante es inevitable la conclusión en vista de los autos y de los hechos declarados probados por la corte de que la amistad entre el demandante y otra mujer era muy marcada en verdad, que él era muy asiduo en sus atenciones con ella y que frecuentemente estaba en compañía de ella bajo circunstancias tales que obligaban a levantar sospechas, todo esto a pesar de las protestas y oposiciones de su esposa.

Las autoridades sostienen, como indica el apelado, que la defensa de recriminación debe ser de tal naturaleza que dé derecho a un demandado a un divorcio independientemente. Puede o no ser cierto como ha sugerido la corte inferior y el apelado que un sólo acto de violencia no sería fundamento de divorcio, pero creemos que este acto de violencia unido a la conducta general del demandante con su esposa, particularmente en relación con esta otra mujer, y el subsiguiente abandono de la demandada, fueron todos actos equivalentes en su relación general a constituir un caso de trato cruel igual en grado por lo menos a la tendencia general de actos de crueldad que se alegan en la demanda y prueba del demandante, y bastantes para hacer ineficaz la acción, suponiendo que sea suficiente la demanda.

Alega especialmente la apelante el abandono como materia de recriminación. El apelado contesta basado en la teoría de la interrupción debido al pleito de divorcio establecido contra él. Ninguna de las partes ha citado autoridad sobre la cuestión de la interrupción. Necesariamente

que si el apelado no probó un caso de trato cruel el término para el abandono correría pero por supuesto que si no hay ningún caso de trato cruel no es necesario considerar ninguna cuestión particular de recriminación. En relación con esto no discutiremos con amplitud la alegada cuestión de condonación por el hecho de desistir la demandada de las dos demandas presentadas por ella excepto para sostener que el desistimiento de una acción nunca impediría a un demandado en un procedimiento de divorcio de poder evitar una sentencia de divorcio cuando la defensa era la mala conducta del demandante. El Estado tiene un gran interés en sostener el matrimonio y no pondrá ningún impedimento u otro obstáculo a un demandado para facilitar el camino al divorcio.

Como hemos dicho la apelante en su alegato fundó su defensa en la teoría de la recriminación, la cual exige, de acuerdo con las autoridades, que se prueben hechos que le proporcionen independientemente un fundamento para el divorcio. Las cortes, sin embargo, en un caso de divorcio, generalmente escudriñarán todos los procedimientos para cerciorarse de si el demandante tiene derecho al divorcio. La mala conducta de un demandante para constituir una defensa por el motivo de provocación, justificación o excusa no ha de ser tal que por sí dé derecho al demandado a un divorcio, distinguiéndose así de la mala conducta que constituye la defensa de recriminación, la cual debe por sí ser suficiente como fundamento de divorcio. 19 C. J. 77, y especialmente los casos citados en las notas 54 a la 57.

La apelante aunque no establece su defensa distintamente en el motivo de provocación, en su contestación expone los hechos y en el alegato hace cita de la sentencia dictada por esta corte en el caso de *Fernández* v. *Hernández,* 8 D. P. R. 243, donde se dice lo siguiente:

"El cónyuge que ejercita la acción trascendental de divorcio que ha de romper el vínculo matrimonial y destruir el hogar que nació

por el mutuo amor y en donde existen hoy hijos inocentes, debe estar limpio de toda culpa, debe ser una verdadera víctima que agotó todos los medios amistosos para detener el mal en su origen.''

La contestación simplemente expresa los hechos de donde una corte podría colegir los motivos de provocación o excusa y todos eran anteriores o contemporáneos a los alegados actos de crueldad de la demandada. Encontramos prueba robusta en este caso de que la causa que dió lugar al trato cruel como se alega en la demanda o tanto de él que pudiera quizás considerarse cruel fué la conducta del demandante y particularmente sus relaciones con otra mujer a las cuales nos hemos referido.

*Boeck* v. *Boeck*, (Idaho) 161 Pac. 576, fué un caso en que la corte declaró probado que la actitud de la esposa hacia su marido era indiferente, fría, desagradable y quejosa y tendía a impulsarlo, y lo impulsaron a ciertos actos los cuales en ausencia de la mala conducta por parte de ella hubieran equivalido a extremada crueldad como se define en el estatuto. La corte se expresó como sigue:

''El divorcio es un remedio para beneficio de uno de los esposos agraviados que no ha sido la causa voluntaria y determinante de los actos en que se funda para invocarlo, y no está al alcance de una persona que en desatención de la solemnidad de los lazos conyugales impulsa al otro cónyuge a observar una conducta que sería inexcusable de cometerse contra un marido o mujer que verdaderamente trataba de sostener las relaciones matrimoniales.''

En el caso de *Barber* v. *Barber*, 168 App. Div. 212, en el cual la corte inferior había dictado sentencia a favor de la mujer fué revocada la sentencia manifestando la corte que cuando la mala conducta del demandado es la consecuencia de la mala conducta del demandante la corte no decretará una separación. *Jones* v. *Jones*, 64 So. 4, es un caso semejante, en el que la corte declara culpable a la mujer de tal mala conducta provocativa que anula su derecho al remedio.

En el caso de *May* v. *May,* So. 679, la corte dijo lo siguiente:

"La crueldad frecuentemente es un término de significación relativa y cuando la esposa ha hecho recaer sobre sí misma el trato cruel de que se queja por su propia mala conducta la culpa en gran modo la tiene ella y sería necesario presentar una caso mucho más completo que si su conducta no pudiera tacharse."

Véase también el caso de *Voss* v. *Voss,* 147 N. W. 634; nota a *Thompson* v. *Thompson,* 5 A. L. R. 719, donde se indican casos en los cuales la conducta que pone en peligro la vida no sería suficiente para un divorcio si tal conducta fué provocada por el demandante, y véase también las notas a 19 C. J. 77.

Un hombre o una mujer puede ser culpable de una conducta que esté muy lejos de constituir un verdadero adulterio y esta teoría de provocación o excusa ser todavía suficiente fundamento para impedir que se decrete un divorcio por crueldad. *MacAllister* v. *MacAllister,* 75 N. W. 256, fué un caso en el cual el esposo estaba reputado como buen cantante y con frecuencia recibió invitaciones de personas. Su esposa se oponía a que se reuniera con ciertas mujeres, particularmente con aquéllas de mala reputación. El permanecía fuera de la casa mucho e innecesariamente debido a algunas de estas compañías. Los autos mostraban y la corte hizo el comentario de que en varias ocasiones su conducta fué tal que debió saber que seriamente pondría a prueba la creencia de su esposa en su fidelidad como esposo. De estos hechos la corte llegó a la conclusión de que aunque la infidelidad matrimonial no existía, sin embargo, su acción para obtener el divorcio por el fundamento de serios sufrimientos mentales debido a los cargos hechos por la esposa a los hijos y a otras personas, no podía prevalecer.

Pero si no hubiese sido por su mala conducta los cargos hechos contra ella le hubieran dado derecho a un divorcio.

*Ruttledge* v. *Ruttledge,* (Mo.) 139, S. W. 1180, fué un

caso en el cual un marido empezó y sostuvo relaciones con una prima hermana suya no obstante las repetidas protestas de la esposa y bajo circunstancias que indicaban sospechas. El divorcio fué solicitado por el fundamento de que la esposa le había proferido indignidades tales como el acusarle falsamente de adulterio, llamarle por epítetos, pelear con él, etc. La corte se expresó en estos términos:

"Estamos convencidos de que los actos de la demandada por los cuales el demandante solicita el divorcio 'fueron la consecuencia natural o probable de su misma conducta y por tanto atenúan los actos del demandado y rebajan la naturaleza ofensiva a un grado inferior del que la ley exige para justificar la ruptura del lazo matrimonial.' *Owen* v. *Owen,* 48 Mo. App. 208."

De modo que la mala conducta de un demandante reducirá el grado de la ofensa. En el caso de *Spofford* v. *Spofford,* (Idaho) 108, Pac. 1054, la corte dijo lo siguiente:

"Según las circunstancias de este caso los actos probados contra el apelado no pueden ser considerados como que constituyen extremada crueldad dentro de la significación del estatuto. Sección 2649, Códigos Revisados. Con esto no queremos significar que la conducta del apelado en este sentido sea recomendable o que un hombre ha de soportarla para siempre con paciencia. El apelante, sin embargo, no ha estado libre de culpa y censura. El ha seguido una línea de conducta en relación con otras mujeres tendente a levantar sospechas por parte de la esposa y a encender las llamas de los celos. Es lógico decir que los autos dejan enteramente de mostrar que el apelante ha estado relacionado· ilícitamente con ninguna de estas mujeres; y más bien nos inclinan a la creencia de que no ha sido así; pero él ha sido indiscreto e imprudente en su conducta y ciertamente estaba en el deber para consigo mismo y su esposa de 'evitar la apariencia del mal.' Es tan enteramente esencial a la felicidad y tranquilidad domésticas que las partes al matrimonio se conduzcan de tal modo que cada una de ellas esté fuera de sospechas por parte de la otra como en realidad lo es ∙l estar libre del acto de que se sospecha."

Véase también a *Ashton* v. *Grucker,* 48 La. Ann. 1199, 1200.

Otra corte ha considerado el principio mediante provocación o excusa en la forma de un impedimento (*estoppel*). *Paige* v. *Paige,* 161 N. C. 175. Los siguientes son párrafos de este caso:

"La infelicidad doméstica de ellos se debe todo aparentemente a la mala conducta de la esposa.

"Nadie puede ir contra sus propios actos."

Es posible que estemos equivocados en resolver que todos los actos de la demandada como han sido imputados en la demanda hubieran estado justificados por la mala conducta del demandante, pero eso nos lleva a otro aspecto del caso. El apelado sostuvo en la vista que los actos en conjunto de la demandada constituyeron crueldad. El no se basó tanto en ningún acto específico imputado en la demanda. De acuerdo con las reglas de esta corte el fiscal ha presentado un informe en donde declara entre otras cosas que los fundamentos de divorcio alegados en la demanda no han sido probados. El apelado, aunque la apelante no insistió en esto como error, previó que la corte tal vez lo consideraría *sua sponte,* como lo hacen las cortes especialmente en casos de divorcio, y por tanto argumentó la cuestión.

La mayor parte de la materia específica alegada en la demanda no fué suficientemente probada. Gran parte de la controversia en la corte inferior giró sobre la cuestión de si la demandada había contribuído en hacer que un caso de *misdemeanor* contra su marido se convirtiera en una acusación por tentativa de homicidio, de cuya acusación fué él absuelto por un jurado. El juez de la corte inferior resolvió que la Sra. Kennerley había contribuído de tal modo, pero no podemos entender esta conclusión puesto que el fiscal auxiliar declaró como testigo y varias veces negó que ella fuera responsable de que se le acusara de la ofensa más grave. El declaró que ella iba frecuentemente a su oficina a hablar de sus disgustos y a hacer, ella misma, cargos, creyendo que el

fiscal podría ayudarla en sus dificultades con su esposo, idea
que es común a muchas mujeres, según dijo, pero negó ro-
tundamente que ella solicitara que se siguiera una causa en
el caso particular en cuestión. Ella, efectivamente, informó
bien respecto de lo que realmente había sucedido. Ella y
otras personas le suministraron informes que servían de base
para el cargo más grave. El juez, que era entonces el fiscal,
sin embargo cree que ella contribuyó en cambiar la acusa-
ción. Hay algo en la opinión de la corte y en el alegato del
apelado que puede inducir a uno a creer que el juez tuvo
algo en su mente que no hizo aparecer en los autos. Si fué
así, es innecesario hacer deducciones pues no ha sido reve-
lado y estamos limitados a los autos. En ellos no encon-
tramos absolutamente ninguna justificación para hacer el
cargo de que la esposa solicitó que la acusación más grave
fuese presentada contra su esposo. No podemos suponer
por un momento que la acción del fiscal o su auxiliar fué
consecuencia del acto o palabras de la demandada. El fiscal
auxiliar declaró que hizo la acusación después de la debida
investigación. Estamos obligados a creer que el fiscal cum-
plió con su juramento y acusó, no por nada que le dijera la
señora Kennerley sino por virtud del examen de los testigos,
y el hecho de haber sido absuelto el demandante no tiende
a demostrar que el fiscal no tuvo razón para creer que tenía
un caso para un proceso. Además, si la señora Kennerley
suministró informes para subsanar una mala impresión tal
como la que el ministerio fiscal tenía, esto no puede consi-
derarse crueldad. Ni siquiera muestra una actitud mental
maliciosa. No encontramos prueba alguna de crueldad en
esta acción por parte de ella aún suponiendo que creyendo
culpable a su esposo ella había solicitado que se siguiera el
proceso, hecho que no ha sido probado y que ni siquiera es
probable.

La demanda imputaba el hecho de que la esposa había
alegado en dos distintas demandas por ella presentadas, que

su esposo le había transmitido una enfermedad infecciosa y que tal cargo era falso. La demanda no expresaba que estos cargos se hicieron maliciosamente. La prueba, aunque fué impugnada por la demandada en cuanto a la fecha respecto a la cual se declaró, tendía a demostrar que los cargos eran falsos, y la corte así lo creyó, pero no hubo ninguna otra prueba de malicia que no fuera la de que cada vez la señora Kennerley desistió de su cargo. Dijo ella que había desistido porque no quería sostener sus cargos y quería que su esposo volviera a unirse a ella. Ella juró la veracidad de los cargos y su prueba en este particular fué admitida por estipulación, conviniendo las partes en que ella así lo declararía. Los cargos como estos tienen cierta analogía a la persecución de una causa, criminal o civil. Dijo la Corte Suprema de los Estados Unidos, en el caso de *Stewart* v. *Sonneborn,* 98 U. S. 1812, caso que ha sido muy citado:

"Ha quedado bien establecido que no puede sostenerse una acción contra un demandante o denunciante que ha fracasado a menos que se demuestre afirmativamente que fué movido en su conducta por malicia o algún motivo indebido o avieso. * * * A pesar de lo que se ha dicho en algunas decisiones respecto a una distinción entre acciones para procesos y pleitos civiles, ambos casos en la actualidad requieren sustancialmente los mismos elementos."

Véase también el caso de *Paganacci* v. *Lebrón,* 24 D. P. R. 796. En el tomo 19 C. J. 51, se dice que ordinariamente los cargos falsos de adulterio proferidos ya por el marido o la mujer maliciosamente y sin debida causa constituyen crueldad de acuerdo con la ley; para que sean por tanto crueldad legal los cargos falsos de adulterio o de transmitir una enfermedad venérea, lo que prácticamente es la misma cosa, debe demostrarse que se han hecho maliciosamente. No hubo tal prueba en este caso.

El cargo de haber sobornado a tres señoritas del teléfono para conectar el teléfono de la demandada con los teléfonos del demandante y la otra mujer es uno de los actos de cruel-

dad y persecución imputados a la demandada. Francamente que no vemos ningún acto de crueldad hacia el demandante. Fué a lo sumo una curiosidad no muy correcta originada por los celos pero no hay nada en la prueba de que el demandante fué agraviado o perjudicado por esta conducta por parte de la demandada. No consta que la señora Kennerley hiciera ninguna manifestación a las señoritas del teléfono cuando las sobornó suponiendo que ella en realidad las sobornara, hecho que ha sido negado por ella. El soborno no fué probado pero solamente el superintendente de la compañía de teléfonos, no obstante la objeción de la demandada, hizo una manifestación de que a petición del Capitán Kennerley había hecho una investigación y que como resultado de ella dos señoritas fueron destituídas. El mismo no hizo la investigación y según parece ni siquiera habló con las señoritas despedidas. Por virtud de esta investigación basada en referencias, la separación de las dos señoritas y de alguna prueba de que los teléfonos efectivamente fueron así conectados, la corte inferior declaró probado el hecho de que la señora Kennerley había sobornado a las jóvenes. No creemos que la corte en un caso ordinario declararía culpable a la señora Kennerley de soborno u otro cargo semejante basado en tal prueba.

El demandante declaró tendente a mostrar que la demandada y su madre fueron a su cuarto y con revólver en mano ella solicitó que procediera a hacer la división de los bienes gananciales, los cuales, alega la demandada, fueron aportados principalmente por ella. Hay prueba considerable de que las cuestiones económicas jugaron un papel importante en las desavenencias de este matrimonio. Este supuesto acto de crueldad en particular no fué alegado en la demanda y no parecía inspirar al demandante un gran temor, pues él desarmó a su esposa, y el acto alegado, al parecer, no produjo ninguna impresión en el juez sentenciador puesto que no lo mencionó.

Hay otros cargos específicos en la demanda que o no fueron probados, o comentados por la corte o el apelado.

Queda el cargo general de trato cruel por medio de palabras en las llamadas telefónicas y así continuado por un número de años. La corte manifestó que esta conducta comenzó antes del año 1918, pero no encontramos prueba de relaciones muy tirantes antes de ese año y el demandante mismo dijo que las primeras desavenencias serias comenzaron en el año 1918. Las partes tuvieron algunas desavenencias en el año 1917, pero la señora Kennerley regresó a los Estados Unidos y toda la situación desagradable surgió al volver a Puerto Rico en abril de 1918. Después de esa fecha hay prueba considerable de conducta que era desagradable y mortificante y probablemente no la debida conducta de una esposa para con su marido bajo circunstancias normales, pero no encontramos que la conducta de la esposa sea suficiente para un divorcio por el fundamento de crueldad. Aunque la demanda habla de actos de crueldad hay muy poca prueba de que la demandada constantemente insultaba al demandante en público y a presencia de sus amigos y asociados en los negocios, llamándole por epítetos obscenos o de que ella constantemente seguía al demandante a las casas de sus amigos y a todas partes donde iba, insultándole. Hubo un caso de insultos de esta naturaleza en su casa, pero la prueba fué tan contradictoria en este particular que no podemos encontrar la crueldad imputada. Hemos dejado de mencionar otro acto específico de crueldad, o sea que la demandada y un policía penetraron en la casa donde se suponía que estaba el demandante y practicaron un registro. Esta fué, sin disputa, la casa donde la otra mujer vivía, pero la prueba no revela que o la señora Kennerley o el policía, se condujeron de tal modo que su conducta afectara necesariamente al demandante. A falta de algún acto específico o palabra de la señora Kennerley a

alguna otra persona que no fuera el policía que la acompañaba, no encontramos un acto de crueldad. No podemos hallar en ninguno de los actos de la demandada ese elemento de malicia o crueldad que ordinariamente daría derecho a un demandante a obtener un divorcio, y esto independientemente de la cuestión de provocación la que también debe jugar un papel. Por supuesto, incluímos en esta conclusión que ninguno de los cargos específicos fué probado.

Este fué un caso en el cual el demandante se fundaba en cargos específicos para establecer los cargos generales. No habiéndose probado satisfactoriamente ninguno de los actos específicos declaramos que el cargo general fué insuficientemente probado.

La sentencia apelada debe ser revocada y desestimarse la demanda.

> *Revocada la sentencia apelada y desestimada la demanda.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.