RAFAELA SANTIAGO, demandante y apelada, *v.* ULISES JIMÉNEZ, demandado y apelante.

No. 3790.—*Visto:* Febrero 19, 1926. *Resuelto:* Abril 28, 1926.

1. DIVORCIO—DE LAS CAUSAS DE DIVORCIO—TRATO CRUEL E INJURIAS GRAVES—SEVERIDAD DE TEMPERAMENTO, MAL GENIO, RUDEZA DE LENGUAJE—CIRCUNSTANCIAS A CONSIDERAR Y APRECIAR.—Si los actos imputados a un demandado son o nó constitutivos de trato cruel es cuestión que depende en gran parte del grado de educación, cultura y refinamiento de la esposa.

2. DIVORCIO—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIOS—APELACIÓN—REVISIÓN—CUESTIONES DE HECHO Y CONCLUSIONES—CONCLUSIONES DE LA CORTE INFERIOR.—Estando la corte inferior en mejores condiciones que el Supremo para juzgar el grado de educación, cultura y refinamiento de la esposa a los efectos de determinar si los actos imputados por ésta al esposo constituyen o nó trato cruel, atendidas las circunstancias del caso, no se varió la conclusión a que llegó la corte inferior sobre esa cuestión.

3. DIVORCIO—DEFENSAS—RECRIMINACIÓN—ADMISIONES DE CULPABILIDAD. — En el caso de autos, atendidas las admisiones de culpabilidad que resultan de una carta de la demandante, se resolvió: que dichas admisiones, interpretadas en relación con la explicación contenida en su contexto, no pueden considerarse como suficiente por sí para constituir sin más una defensa fundada en la teoría de recriminación.

SENTENCIA de *M. Rodríguez Serra,* J. (Segundo Distrito, San Juan), declarando con lugar demanda de divorcio, con costas. *Confirmada.*

*Juan B. Soto,* abogado del apelante; *Román Díaz Collazo,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La demandante obtuvo sentencia de divorcio a su favor y el demandado alega que la corte inferior cometió los siguientes errores:

"Primero:—La Corte erró al declarar con lugar la demanda, y en su consecuencia probadas todas sus alegaciones, cuando en reali-

dad de verdad éstas no solamente dejaron de probarse, sino que fueron contradichas y desvirtuadas por la prueba del demandado.

"Segundo:—La Corte erró al declarar con lugar la demanda y al no desestimar la misma, habida consideración de no aparecer de la prueba presentada, ser ella el cónyuge inocente en cuanto a los hechos que motivaron la acción de divorcio, y al haber admitido su culpabilidad en cuanto a los mismos."

[1, 2] El divorcio fué decretado por el fundamento de trato cruel. La demandante declaró sobre un acometimiento grave por parte del demandado al regreso de la demandante después de haber salido de la casa a una diligencia desatendiendo las órdenes anteriores del demandado.

El demandado negó la agresión pero admitió al declarar como testigo que mientras la demandante estaba en la iglesia el demandado registró su baúl y encontró una carta de su madre; que luego al llevar a cabo el plan que cuidadosamente había concebido, el demandado logró sorprender a la demandante cuando estaba contestando la carta de referencia; y al negarse dicha demandante a entregar tal contestación el demandado la obtuvo mediante violencia.

Estas dos cartas fueron presentadas como prueba por el demandado. La primera es completamente laudatoria para el demandado, contiene muchos sanos consejos y parece haber sido escrita por una suegra excepcionalmente discreta, así como por una inteligente y afectuosa madre. Desgraciadamente para la demandante, sin embargo, resulta también muy claro que dicha carta fué escrita en contestación a una queja que a su madre le hiciera la demandante.

La contestación a esta carta que fué cogida por el demandado, contiene un relato de la violencia y el lenguaje abusivo del demandado; y el demandado admitió que después del incidente arriba referido mandó a la demandante a donde su madre.

La demandante en la fecha de los anteriores sucesos era una mujer joven de 20 años y estaba encinta.

La edad precisa del demandado no consta, pero los autos

revelan que era el padre de seis hijos habidos con la anterior esposa, de quien se había divorciado poco antes del matrimonio con la demandante.

La prueba testifical del demandado tiende también a corroborar la de la demandante en cuanto a otro suceso más o menos violento que ocurrió inmediatamente de la llegada del demandado a la casa de la suegra y su hija, poco tiempo después del nacimiento del niño. Aquí también admite el demandado que al negarse la esposa a permitir que él viera al niño la amenazó con llevárselo, e hizo ver que iba a cumplir su amenaza.

El alcalde del pueblo, testigo del demandado, declaró que fué informado del suceso y llegó al sitio a tiempo en que pudo ver a la esposa desaparecer por la esquina de la calle con su niño. También dijo que encontró al demandado en un estado de excitación nerviosa y le persuadió a que regresara a su hotel.

La prueba en conjunto, incluyendo la del demandado, no deja lugar a duda en cuanto a que la demandante recibió una fuerte impresión.

El juez sentenciador evidentemente aceptó como cierta la versión que hace la demandante acerca de las palabras fuertes empleadas por el demandado y varios cargos de infidelidad y mala conducta que se dice fueron hechos por él en este caso.

Si los actos imputados al demandado por la demandante que comprendían un período de varios meses eran o nó constitutivos necesariamente de trato cruel, es cuestión que depende en gran parte del grado de educación, cultura y refinamiento de la esposa. Sobre estas cosas la corte inferior estaba en mejores condiciones para poderlas juzgar en vista de la apariencia general y el comportamiento de la demandante como testigo que este tribunal mediante una lectura del récord taquigráfico. Atendidas todas las circunstancias, no estamos dispuestos a variar la conclusión a que llegó la corte inferior sobre esta cuestión.

[3] La segunda proposición contenida en el señalamiento de errores se funda en ciertas admisiones de culpabilidad que aparecen en una carta a la cual ya se ha hecho mención y en admisiones semejantes hechas por la demandante en el interrogatorio de repreguntas.

Del récord taquigráfico hacemos la siguiente cita:

''Dmdo.—P.—¿Ud. ha dicho que no sabe las razones que tiene el demandado para estar incomodado con Ud?—R.—No señor.—P.—¿No es verdad que Ud. le manifestó al demandado, en Aguas Buenas, varias veces, que lo odiaba, que no lo quería, que no quería relaciones con él?—R.—Sí señor, como estaba siempre peleando conmigo, no me podía asomar a una ventana; hasta la lavandera que le lavaba tenía que traer la ropa por una ventana, porque todo era malo; tenía que andar derechita, todo eran celos, no podía vivir con él.—P.—¿Él la celaba a Ud?—R.—Diario, diario.—P.—¿Eso hacía que no lo quisiera?—R.—Seguro, y como me calumniaba tantas veces; a principios me calumniaba muchísimo. Figúrese.—P.—¿Por qué adoptaba esa actitud, por culpa de él o de Ud?—(Dte.)—Me opongo a la pregunta. Es imposible que le conteste eso.—(Juez):—Puede contestar a qué obedecía eso, si lo sabe.—(Dmdo.)—P.—Fíjese en esta carta.—R.—Esa carta la escribí yo.—P.—Vamos a ofrecerla en su oportunidad. Quiero que se marque como Exhibit 1 del demandado para ser presentada en su oportunidad. ¿Esa carta, cuando la escribió a su mamá, la escribió en contestación a otra carta de ella?—R.—No señor, yo no recuerdo. Me escribió tantas veces!—P.—Para refrescar su memoria, mire esa carta.—R.—Sí señor, es una carta de mamá.—P.—¿Una carta que ella le escribió a Ud?—R.—Sí señor.—P.—¿En contestación a esta carta le escribió ésta?—R.—No sé; ella me escribió muchísimas.—P.—¿No sabe si fué contestando ésa?—R.—Eso fué al principio que me fuí para allá. Un mes y pico que estuve allá. Esa carta que él tiene mía, la escribí yo como una semana antes de haber pasado eso. Un domingo, por la tarde. Un sábado salió al corral, y yo estaba sentada en un sillón y él también, y salió al corral y cuando subió me dijo, sin tener nada, que era una puta; sin hablar; no sé que tendría él; él me tenía tipo de tener capacidad y entonces yo le contesté 'que Dios quisiera que la hija mayor de él le saliera lo que él me decía'; ahí se paró y me dió una garnatada y como me eché

a gritar cogió una silla para darme; eso fué un sábado en la tarde, le dije que se lo iba a decir a mamá, y estaba pendiente de que escribiera, y cuando subió estaba escribiendo y me cogió la carta, domingo por la noche; no me dijo nada, peleó conmigo, y así estuvo viviendo una semana; después de la semana entonces fué que me pegó, porque salí al teléfono a preguntarle a mamá cómo estaba ella; él le había dicho a mamá que la iba a llevar para allá, como le escribí si iba o no y no contestaba, le pregunté por teléfono si iba a ir o no.''

La carta en cuestión es como sigue:

''Aguas Buenas, P. R.—Enero 21, 1924.—Querida Yoyo:—Después de saludarte y pedirte la bendición, paso a contestar tu carta. —Yoyo, Honoria no quiso quedarse; pero te contará. Yo sé que yo tengo la culpa de todo esto; pero me es imposible seguir esta vida.—Yoyo, tú sabes que yo no quiero este hombre; prefiero vivir más mal en casa y estar tranquila que vivir aquí. Yoyo, si supieras que este hombre; Honoria se fué para Caguas el sábado, y se puso a pelear conmigo y se puso a decirme que yo no era nada más que una puta, y yo le dije, que la esperanza era que lo viera por una hija de las dél; y se levantó de donde estaba y me dió dos garnatás y como fué la primera vez que me da, ahora sigue dándome y como yo no puedo vivir con él, porque no lo quiero. Yoyo, he hecho todo me se imposible. Qué triste es vivir al lado de un hombre que uno no quiere! ¡Me costará la vida! ¡Seguir esta vida me es imposible vivir así! Yoyo, tú sabes lo malo que es no querer una persona? morirse de sentimiento, espero vengas a buscarme. Honoria te contará, y te dirá que yo tengo la culpa; pero yo no se la echo a nadie. Yo no sé; pero es una cosa que me empuja a dejarlo y no puedo estar un momento tranquila, haz todo lo que puedas por mí; si sigo esto me mataré, por que no puedo estar un momento contenta al lado de él. Espero me oigas. Tu hija, ·RAFA.''

Tales admisiones, interpretadas en relación con la explicación contenida en su contexto no pueden ser consideradas como suficientes para constituir sin más una defensa fundada en la teoría de recriminación. *Kennerly* v. *Kennerly,* 29 D.P.R. 777.

*Debe confirmarse la sentencia apelada.*