ANNY LIST, Plaintiff, *v.* EMANUEL LIST, Defendant.

Supreme Court, Special Term, New York County, January 7, 1946.

*Matthew J. Shevlin* for plaintiff.

*Samuel N. Leiterman* for defendant.

WALTER, J. The parties hereto were married in New York in May, 1939, and are residents of New York. Both had been married before and were of mature years. There are no children of their marriage.

The wife brought this action on May 8, 1945, for a separation on the grounds of cruel and inhuman treatment, abandonment and nonsupport.

Both parties are still living in the apartment which they jointly occupied as a home from about 1941, but they occupy separate bedrooms, do not have their meals in the apartment or go out together, and have not even so much as conversed with each other since September, 1944. Defendant pays the rent of the apartment and pays for electricity and telephone service therein, but he gave plaintiff for food and incidental expenses only $75 in March, 1945, and only $50 in April, 1945, although he previously had been giving her $120 per month; and after April, 1945, he gave her nothing except that he has paid the temporary alimony of $40 per week which this court in this action awarded to plaintiff in June, 1945. In view of defendant's means and income, the sums he so paid his wife prior to this court's order cannot be regarded as adequate or even real support.

Plaintiff claims two acts of physical violence, one in September, 1942, and the other in September, 1944. I accept plaintiff's version of those incidents despite defendant's denials, but those incidents, bad as they are, would not of themselves justify a separation on the ground of cruel and inhuman treatment at this time and under present circumstances.

Plaintiff further claims that defendant threatened to kill her, but such threats were so numerous and extended over such a long period of time that it is impossible to believe that they were intended to or actually did inspire in her any real fear for her safety.

In addition to those things, however, there were many bitter quarrels over plaintiff's requests for money with which to run the household and with which to provide herself with needed medical and dental care, and defendant was niggardly and callous and unfeeling in respect to those matters, and was rude, inattentive and neglectful; and by September, 1944, the marriage admittedly had become exceedingly unhappy and distasteful to the point where defendant at least desired to get rid of it and told plaintiff he would not live with her and that she should get out.

Defendant's counsel strongly urges that the fact that plaintiff did not get out and the parties are still living in the same apartment in and of itself prevents plaintiff from maintaining this action. But no holding to that effect in this jurisdiction has been brought to my attention. I make that statement advisedly after having read every case cited by counsel; and I am not disposed to adopt that view of my own accord.

There are numerous cases in which alimony *pendente lite* has been denied to wives who were living in homes provided by their husbands, but the basis of those decisions is not the proposition now urged by defendant, but merely the fact that in those cases there was a lack of any showing that alimony *pendente lite* was necessary; and the very fact that in those cases counsel fees were allowed seems to me to be at least an inferential rejection of the view now urged by defendant, for if the courts in those cases had felt that the living together prevented the wife from maintaining the action no counsel fee for its prosecution would have been allowed.

There is a look of logic in the assertion that courts should not by their judgments separate couples who elect to live together; and if that were an adequate and accurate statement of the problem I doubtless could accede to defendant's contention. I think, however, that that is a very unrealistic view of the situation, and that we shall make a closer approach to truth and justice if we realize that when not merely love and harmony, but, also, the rudiments of companionship and civilized social intercourse have passed out of married life, each spouse is apt to seek a tactical advantage over the other, and if the law says to two spouses so situated that one or the other must

move out before either can obtain legal relief, either one of two things almost inevitably will happen. The more daring character of the two spouses, or, more likely, merely the one having the greater financial resources, will resolve to risk a charge of abandonment by the other and move out, or one or the other, or both, will settle down to a course of conduct designed and calculated to force the other to move out so that a charge of abandonment can be made against that one. The rule urged by defendant thus seems to me to be the one most provocative of separations and unmarital conduct and the one least consonant with sound public policy.

Instead of adopting a mere rule of thumb by saying that in every case moving out is a *sine qua non* of legal relief, I think the circumstances of each case should be weighed on their own merits in an effort to make a common sense appraisal of their weight and gravity in their own setting. That is the view which was taken in *Pedersen* v. *Pedersen* (107 F. 2d 227) and is there said to be in accord with the weight of authority (p. 233, n. 21).

Concluding, therefore, that the mere fact of still living in the same apartment does not necessarily bar plaintiff from any right to relief, I must now endeavor to make such appraisal of the circumstances of this case.

We have here a complete cessation not only of marital intercourse and companionship, but, also, of the very rudiments of any companionship, and even of the ordinary amenities of social intercourse between civilized human beings. We have, too, a callous niggardliness in supplying needed medical care and attention and food and clothing, tapering down to the vanishing point at least when viewed in relation to defendant's means and the station in life of the parties.

I am convinced, too, that defendant's conduct in these respects was motivated by and was part of a settled and deliberate plan to force plaintiff to take some step to end a marriage which he regarded as a mistake and a source of intense unhappiness to himself.

I am of the opinion that all this adds up to abandonment and failure to support justifying a decree of separation, for when there arises between two people the irreconcilable conflict which exists between these parties and all vestige of the reality of marriage has disappeared, it is a vain, and to my mind a far from sacred thing, to attempt to hold them together by a mere name and a meaningless and hateful bond.

In view of that conclusion it seems unnecessary to decide whether or not the situation also adds up to cruel and inhuman treatment, but it perhaps is still not out of place for me to record my opinion that it does.

Plaintiff is accordingly entitled to judgment of separation, with costs and alimony of $300 per month, and I direct the entry of such judgment.

The application for an additional counsel fee is denied. Apart from other obstacles to the granting of such application at this time (*Straus* v. *Straus,* 67 Hun 491, and cases cited in *Zinn* v. *Zinn,* 175 Misc. 381) there is no showing that the case has required any services other than such as must be deemed to have been within the contemplation of the court when the prior award of counsel fees was made.

The application to compel defendant to give security for the alimony hereby awarded is also denied.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.