Irwin D. Davidson, J.
This case presents a not unusual picture of a matrimonial ship which, after having been tossed for several years in the turbulent waters of martial dissension and bickering, finally foundered on the shoals of irreconcilable discord and incompatibility. The plaintiff wife sues the husband for separation. The defendant husband counterclaims for separation from his wife. The true victims are two small children.
The complaint, containing three causes of action, charges first that commencing approximately three months after the marriage and continuing up to the date of the service of the summons on the defendant on January 22, 1957, the defendant
*999 treated plaintiff in a cruel and inhuman manner so as to endanger the plaintiff’s health. The second cause of action charges that the defendant made it unsafe for the plaintiff to cohabit with the defendant. The third cause of action alleges that, although financially able, the defendant failed and refused to adequately support and maintain the plaintiff and her two minor children.
The amended answer denies all the essential allegations in the plaintiff’s complaint and counterclaims for a judgment of separation in favor of the defendant based on the wife’s alleged cruelty to him, her abandonment of the defendant and her refusal to cohabit with him.
While it is true that each party denies the essential allegations charged against the other, certain facts may be regarded as conceded. It is undisputed that the parties were married on March 15, 1951. At the time of this marriage plaintiff was a divorcee without children, while the defendant had been twice divorced, with children and grandchildren. Furthermore, it is undisputed that of the instant marriage two children were born, Kathy Jill Fox born on March 4, 1952, and David William Fox, who was born on May 29, 1953.
The complaint charges the defendant with two alleged acts of physical violence. One is alleged to have occurred during the month of October, 1954, at which time the defendant allegedly, in a fit of temper and after making derogatory remarks about plaintiff’s deceased mother, struck plaintiff, causing her to fall to the floor and faint. The other act allegedly took place on May 29, 1956, at a time when plaintiff objected to the defendant’s saying that he was about to discharge the babies’ nurse. He was charged with having grabbed the plaintiff by the wrists, throwing her to the floor. The testimony fails to support the plaintiff’s claim that these charges of physical violence occurred in the manner in which she alleges.
With respect to the first incident which occurred in October, 1954, a fair inference of the credible testimony establishes that the defendant did not strike the plaintiff but that, as she approached him, he attempted to ward off a threatened pummeling by her, and he made a wide sweeping gesture of his right arm and hand, and, in so doing, pushed her aside touching the area of her left upper-arm.
This incident is not such an act of deliberate assault as would warrant the inference that the defendant intended to inflict injury upon the plaintiff. Even if it had occurred as plaintiff claimed, which is denied by the defendant, an isolated incident *1000 of this nature would not justify the granting of a decree of separation (Be Vide v. De Vide, 186 App. Div. 814). Moreover, the gravity of this incident fades into insignificance in view of the fact that after its occurrence the parties removed from their Park Avenue apartment to a more spacious and expensive one at No. 40 East Sixty-sixth Street, furnished the latter apartment rather lavishly, and continued living together.
The other alleged assault occurred during the month of May, 1956. At that time the plaintiff claims the defendant grabbed her by the wrists and threw her to the floor of their apartment. Here, too, the evidence fails to support the plaintiff’s charge. The indication is that the defendant again sought to avoid a threatened harangue and pummeling by the plaintiff and, in doing so, grabbed both her wrists and forcibly sat her down in a chair. This likewise is a far cry from the claim that he willfully and deliberately inflicted physical violence on the plaintiff.
These two alleged acts of physical violence occurring at widely separated times fail to support the claim of cruel and inhuman conduct. The plaintiff obviously had no fear of violence from her husband, she continued to live with him.
Plaintiff’s claim that the defendant’s statement “ Were it not for my religion, I would kill you,” was a threat to take her life seems far-fetched and unrealistic. In the context of this relationship it would seem that it certainly did not inspire in her any real fear for her safety. This assertion is rejected (List v. List, 186 Misc. 261).
Viewed in their proper perspective, the allegations contained in the plaintiff’s complaint and the proof which she offered in support thereof are really inadequate attempts to rationalize and justify her rash and unauthorized act of barring her husband from the marital home on January 22, 1957. Having taken this very drastic step, the plaintiff endeavors to bolster her claimed right to follow this course of action by exaggerating relatively trivial incidents out of all proportion to their importance and distorting certain kind and tender acts of the husband into what she regarded as harsh and inconsiderate conduct on his part. That there was incompatibility, discord and unhappiness to which both parties contributed there is no doubt.
The plaintiff claims that the defendant insulted and berated her; that he slammed doors and rattled dishes and made disparaging and derogatory remarks about her deceased mother; that he balked and expressed objection at becoming a father again in so late a stage of his life; that he remained away from *1001 home evenings and refused to inform his wife of his whereabouts ; and that he threatened to discharge the children’s nurse as well as the maid. Certainly this was not a happy marriage and the acts of each were misinterpreted, unappreciated, distorted and resented.
However, the plaintiff’s claims of ill-treatment are not of such consequence as to warrant the relief she seeks. These incidents, if they did occur, are not sufficiently significant to measure up to acts of cruel and inhuman conduct which would warrant this court in granting the plaintiff a separation (Pearson v. Pearson, 230 N. Y. 141; Schechter v. Schechter, 293 N. Y. 670; Smith v. Smith, 273 N. Y. 380; Avdoyan v. Avdoyan, 265 App. Div. 763).
Concerning the plaintiff’s claim that the defendant improperly and unjustly accused her of having an affair, the facts indicate that at most on a few occasions during their many heated verbal exchanges, the defendant addressed the plaintiff in uncomplimentary terms and impliedly questioned the propriety of her conduct when he answered a telephone ring and the party calling in, after hearing his voice, promptly hung up. This is not tantamount to wantonly and maliciously accusing the plaintiff of infidelity or having clandestine relationships.
The law permits a separation and denominates as cruel and inhuman conduct charges of infidelity with a named person which are wantonly and maliciously made (Sherman v. Sherman, 304 N. Y. 911). However, there is here no proof that this defendant wantonly and maliciously made false accusations of the plaintiff’s infidelity.
As an example of the plaintiff’s distorted viewpoint a thoughtful and considerate act on defendant’s part of inviting a couple to dine with the plaintiff and himself at the Doctor’s Hospital several days after she had given birth to her second child is turned by her into a nasty, unkind and cruel act by the defendant and alleged in her complaint as one of the grounds for separation. To denominate this conduct as inconsiderate and thoughtless is wholly preposterous.
The parties lived in the height of luxury for several years during the time that the defendant’s business prospered and flourished. He was profligate and she joined him in his extravagance. Obviously, the plaintiff refused to change her mode or habits of living when he met reverses in his business. Notwithstanding the fact that she shared in this lavish mode of living which might have been occasioned by his selfishness, she refused to accommodate herself to a scale of living commensurate with the defendant’s reduced income.
*1002 There is no question but what the defendant’s financial reverses were a major factor in precipitating the rupture of this marriage. For several years the parties lived in a luxurious apartment, elegantly and expensively furnished. They frequented the most expensive restaurants and nightclubs and lived in a grand manner. The plaintiff had a nurse for her children and an additional nurse on that nurse’s day off. There was a maid for the home and additional help to assist the maid with the heavy cleaning. She received $300 a week as an allowance for the maintenance of the household. When old enough, the children attended private school. For several years, at substantial cost, a summer home was rented at a seaside resort. When the financial picture changed and the defendant could no longer continue to live on such a grandiose scale, he suggested to the plaintiff that they modify their scale of living. It was then that the plaintiff balked at making any change. The defendant suggested that various economies be instituted. He insisted that the nurse for the children be discharged and that one housekeeper be hired to take care of the problem of looking after the home and helping his wife care for the children. This move was rejected by the plaintiff. He suggested that they remove from their expensive east side residence to an apartment in Eiverdale where the children could attend public school so that the rental and all other overhead expenses might be substantially reduced. The defendant actually entered into a lease for an apartment in Eiverdale and asked the plaintiff to remove thereto with him. The plaintiff regarded these suggestions with suspicion and a jaundiced eye. She interpreted them as acts of attrition and, to use her own words, she felt that he was striking at her through her children. Plaintiff denies defendant ever discussed his financial condition with her despite the fact that he reduced her allowance substantially, insisted upon discharging the children’s nurse and the maid and discussed other economies. In the context of the testimony, her denials in this regard are incredible and unworthy of belief.
When the plaintiff realized that the defendant was determined to remove from their East Sixty-sixth Street apartment to Eiverdale on the morning of J anuary 22, 1957, after the defendant had left for business, and without any previous notice to him, she changed the locks on the door of the apartment, installed a private guard therein, and effectively prevented the defendant from returning to live in his apartment. This unjustified act by plaintiff can only be regarded as abandonment of the defendant by the plaintiff.
*1003 The law is clear that the wife must go to the home which her husband provides (Matter of Daggett, 255 N. Y. 243; Downes v. Downes, 225 App. Div. 886; Vetrano v. Vetrano, 54 N. Y. S. 2d 537). If the husband desires to move to another locality and, in good faith, offers a home and maintenance to his wife, if she then refuses to accompany him, except for good cause, she has in a legal sense abandoned him (Manufacturers Trust Co. v. Gray, 278 N. Y. 380; Matter of Roessler, 171 Misc. 306).
Much of the testimony in this protracted trial related to the financial condition of the defendant at various stages of his marital life. There is little question that the defendant lost huge sums of money in his business. It is true that the defendant was extravagant, profligate and self-centered and charged off as business expense many of his personal and household expenses. He indulged in this practice over the years. The benefits of this practice were enjoyed by the plaintiff as well as the defendant. It is clear, however, that with the passage of time he did suffer serious and devastating losses in his business and financial standing. The court finds that the reduction in weekly allowances which the defendant made to the plaintiff for the maintenance of the household and the economies insisted upon by him were occasioned by his business reverses and his shrinking finances. They were not occasioned by a desire on his part to punish his wife.
The plaintiff has utterly failed to prove her allegations that the defendant’s conduct was cruel and inhuman, or that there was reasonable apprehension on her part that continued cohabitation with the defendant would be unsafe and improper. Likewise, it has not been established that he failed adequately to support and maintain her and the children. The plaintiff has failed completely to meet the burden of proof which the law imposes upon her (Barber v. Barber, 168 App. Div. 212). The plaintiff’s prayer for a decree of separation in her favor against the defendant is in all respects denied.
The plaintiff, by her unjustifiable act of barring the defendant from the home on January 22, 1957, leaves the court no alternative but to denominate this conduct an abandonment (Smith v. Smith, 273 N. Y. 380, supra; Downes v. Downes, 225 App. Div. 886, supra). The defendant is entitled to a decree of separation based on the plaintiff’s abandonment of him.
Custody of the children of this marriage is awarded to the plaintiff with suitable visitation rights to the defendant. If the parties cannot agree on the length and frequency of visitation rights, they may reapply to the court. Defendant is directed *1004 to permit plaintiff to use the furniture, linens and general household equipment which are presently employed in the plaintiff’s home. Support for both children jointly is ordered in the sum of $100 weekly from January 22, 1957, crediting the defendant for all sums which he paid for that purpose during the period referred to. This sum is exclusive of unusual medical, dental or other extraordinary expense.
Counsel fee in the sum of $5,000, which is inclusive of all disbursements, is allowed to the plaintiff’s attorneys for representing her in opposition to the defendant’s counterclaim. Since accounting services were not necessary to defend the defendant’s counterclaim for abandonment, no reimbursement for such disbursement is allowed, nor will reimbursement be ordered for purchasing stenographic minutes of the trial.
Settle findings of fact, conclusions of law and judgment in' accordance with the foregoing.